## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

HAROLD TOLIVER, an individual;               )
JAMES MCCRINK, an individual;              )
FEDERATED BANK, an Illinois bank,          )
MATT CLARK, an individual;                 )
LARRY KOLKO, an individual;                )
RAMONA ROBERSON, an individual;            )
JANICE FAYHEE, an individual; and          )
JACQUELINE BEIRNES, an individual,         )
                                           )
          Plaintiffs,                      )
                                           )
     v.                                    )     Civil Action No. 06-796-***
                                           )
CHRISTINA SCHOOL DISTRICT,                 )
THRESA GILES, DAVID SUNDSTROM,             )
and JOSEPH WISE,                           )
                                           )
          Defendants.                      )
_____  )
                                           )
CHRISTINA SCHOOL DISTRICT,                 )
                                           )
          Third-Party Plaintiff,           )
                                           )
     v.                                    )
                                           )
SCIENTIFIC LEARNING                        )
CORPORATION,                               )
                                           )
          Third-Party Defendant.           )

## **AFFIDAVIT PURSUANT TO D. DEL. LR 4.1 (b)**

STATE OF DELAWARE              :
                              : SS:
COUNTY OF NEW CASTLE          :

    **BE IT REMEMBERED** that on this 7th day of December, A.D. 2007, personally

came before me, the Subscriber, a Notary Public for the State and County aforesaid, James H.

McMackin, III, attorney for Defendant and Third-Party Plaintiff, who being sworn according to law did depose and say as follows:

1.    That to the best of his knowledge, Third-Party Defendant Scientific Learning Corporation is a corporation who is a nonresident of the State of Delaware and whose name and address is as follows:

> Scientific Learning Corporation
> 300 Frank H. Ogawa Plaza, Suite 500
> Oakland, CA  94612

2.    That on October 17, 2007, the Third-Party Complaint in the above-captioned action was filed and that on October 19, 2007, the Clerk issued a Summons to serve the Secretary of State pursuant to 10 *Del. C.* § 3104.

3.    That on October 23, 2007, the Return of Service was filed, a copy of which is attached as Exhibit A.

4.    That on October 29, 2007, the said James H. McMackin, III, Esquire, caused a copy of the Notice, attached hereto as Exhibit B, to be mailed by Registered Mail to the following Third-Party Defendant:  Scientific Learning Corporation

5.    That as of December 7, 2007, he, James H. McMackin, III, Esquire, has not received from the postal authority the domestic return receipt, but the Notice referenced above was received as evidenced by the Track and Confirm receipt attached hereto as Exhibit C.

6.    That the said Track and Confirm receipt has the same registered number, to-wit: RB 420 634 533 US, as the receipt received at the time of the mailing of said notice, attached hereto as Exhibit D.

- SIGNATURE ON NEXT PAGE –

MORRIS JAMES LLP

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900
Attorneys for Defendant and Third-Party
 Plaintiff Christina School District

Dated:  December 7, 2007

SWORN TO AND SUBSCRIBED before me the day and year aforesaid:

Notary Public

TERESA A. ATWELL
Notary Public - State of Delaware
My Comm. Expires Dec. 19, 2010

# EXHIBIT A

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### District of Delaware

HAROLD TOLIVER, et al., Plaintiffs,
v.
CHRISTINA SCHOOL DISTRICT, Defendant.

**SUMMONS IN A CIVIL CASE**

### V.

CHRISTINA SCHOOL DISTRICT, Third-Party Plaintiff,
v.
SCIENTIFIC LEARNING CORPORATION, Third-Party
Defendant.

CASE NUMBER:  06-796-***

TO: (Name and address of Defendant)

Scientific Learning Corporation
300 Frank H. Ogawa Plaza, Suite 500
Oakland, CA  94612

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

David H. Williams, Esquire (#616)
dwilliams@morrisjames.com
James H. McMackin, III, Esquire (#4284)
jmcmackin@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900/5849

an answer to the complaint which is served on you with this summons, within  20      days  after  service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

# PETER T. DALLEO

10/19/07

CLERK

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | October 22, 2007 |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|
| Greg Frankfetter | Process Server |

*Check one box below to indicate appropriate method of service*

☒ Served personally upon the defendant. Place where _Secretary of State, 401 federal Street, Dover DE 19901._ Service accepted by Karen Charmondaia @ 2:15 pm

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were _____

☐ Returned _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___10-22-07___     ___Gregory Frankfetter___
          Date               Signature of Server

         15 East Ninth Street Dover DE 19901
         Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## Service of Process:

1:06-cv-00796-*** Tolliver et al v. Christina School District

**U.S. District Court**

**District of Delaware**

### Notice of Electronic Filing

The following transaction was entered by McMackin, James on 10/23/2007 at 10:15 AM EDT and filed on 10/23/2007

**Case Name:** Tolliver et al v. Christina School District
**Case Number:** 1:06-cv-796
**Filer:** Christina School District
**Document Number:** 26

### Docket Text:

Return of Service Executed by Christina School District. Scientific Learning Corporation served on 10/22/2007, answer due 11/13/2007. (McMackin, James)

**1:06-cv-796 Notice has been electronically mailed to:**

James H. McMackin , III    JMcMackin@MorrisJames.com, jmcvey@morrisjames.com

Patricia Smink Rogowski    progowski@cblh.com, dkt@cblh.com, vmurphy@cblh.com

David H. Williams    dwilliams@morrisjames.com, JMcVey@morrisjames.com

**1:06-cv-796 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/23/2007] [FileNumber=463501-0
] [8378c7e3a39850872927fa674ffd51c3cdd21e4f896bb9222008e453b6bb2913e4d
9c40179c5e6b7db04c274022f19564155ee6a0318c0c849a6afd66b86f66a]]

# EXHIBIT B

# Morris James LLP

James H. McMackin, III
302.888.5849
jmcmackin@morrisjames.com

October 29, 2007

**VIA REGISTERED MAIL NO. RB 420 634 533 US
RETURN RECEIPT REQUESTED**

Scientific Learning Corporation
300 Frank H. Ogawa Plaza, Suite 500
Oakland, CA  94612

RE:   *Harold Toliver, et al, v. Christina School District v.*
      *Scientific Learning Corporation*
      *C.A. No. 06-796*

To whom it may concern:

Please be advised that Scientific Learning Corporation has been served with Process (Summons) and Complaint in Delaware pursuant to 10 Del. C. § 3104. Service of the original Summons and Complaint in the above referenced case has been made upon the Delaware Secretary of State as agent for acceptance of legal process. Under 10 Del. C. § 3104, such service is as effectual to all intents and purposes as if it had been made upon Scientific Learning Corporation within Delaware.

Enclosed please find a copy of the Summons and Return of Service and the Complaint. Thank you for your attention to this matter.

Very truly yours,

James H. McMackin, III

JHM/jam
Enclosures

1626177/1

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of  Delaware

HAROLD TOLIVER, et al., Plaintiffs,
v.
CHRISTINA SCHOOL DISTRICT, Defendant.

**SUMMONS IN A CIVIL CASE**

## V.

CHRISTINA SCHOOL DISTRICT, Third-Party Plaintiff,
v.
SCIENTIFIC LEARNING CORPORATION, Third-Party
Defendant.

CASE NUMBER:  06-796-***

TO: (Name and address of Defendant)

Scientific Learning Corporation
300 Frank H. Ogawa Plaza, Suite 500
Oakland, CA  94612

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

David H. Williams, Esquire (#616)
dwilliams@morrisjames.com
James H. McMackin, III, Esquire (#4284)
jmcmackin@morrisjames.com
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
(302) 888-6900/5849

an answer to the complaint which is served on you with this summons, within   20   days after service
of this summons on you, exclusive of the day of service. If you fail  to  do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

**PETER T. DALLEO**

_____
CLERK

_Rev Cr_
_____
(By) DEPUTY CLERK

DATE   10/19/07

2002 © American LegalNet, Inc.

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE October 22 2007 |
| NAME OF SERVER *(PRINT)* Greg Trafetter | TITLE Process Server |

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant. Place where Secutary of State, 401 Federal Street, Dover DE 19901. Service Accepted by Karen Charmondeau @ 2:15 pm

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were _____

☐ Returned _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on   10-22-07      _Greg Trafetter_
            Date                  Signature of Server

                              15 East North Street Dover DE 19901
                                  Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

2002 © American LegalNet, Inc.

**Service of Process:**
<u>1:06-cv-00796-\*\*\* Tolliver et al v. Christina School District</u>

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered by McMackin, James on 10/23/2007 at 10:15 AM EDT and filed on 10/23/2007

| | |
|---|---|
| **Case Name:** | Tolliver et al v. Christina School District |
| **Case Number:** | <u>1:06-cv-796</u> |
| **Filer:** | Christina School District |
| **Document Number:** | <u>26</u> |

**Docket Text:**
Return of Service Executed by Christina School District. Scientific Learning Corporation served on 10/22/2007, answer due 11/13/2007. (McMackin, James)

**1:06-cv-796 Notice has been electronically mailed to:**

James H. McMackin , III    JMcMackin@MorrisJames.com, jmcvey@morrisjames.com

Patricia Smink Rogowski    progowski@cblh.com, dkt@cblh.com, vmurphy@cblh.com

David H. Williams    dwilliams@morrisjames.com, JMcVey@morrisjames.com

**1:06-cv-796 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/23/2007] [FileNumber=463501-0
] [8378c7e3a39850872927fa674ffd51c3cdd21e4f896bb9222008e453b6bb2913e4d
9c40179c5e6b7db04c274022f19564155ee6a0318c0c849a6afd66b86f66a]]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

HAROLD TOLIVER, an individual; )
JAMES MCCRINK, an individual; MATT )
CLARK, an individual; LARRY KOLKO, )
an individual; RAMONA ROBERSON, )
an individual; JANICE FAYHEE, an )
individual; and JACQUELINE BEIRNES, )
an individual, )
                              )
         Plaintiffs, )
                              )
         v. )         Civil Action No. 06-796-***
                              )
CHRISTINA SCHOOL DISTRICT, )
                              )
         Defendant. )
_____ )
                              )
CHRISTINA SCHOOL DISTRICT, )
                              )
         Third-Party Plaintiff, )
                              )
         v. )
                              )
SCIENTIFIC LEARNING )
CORPORATION )
         Third-Party Defendant. )

## THIRD-PARTY COMPLAINT

### JURISDICTION

         1.     This Court has jurisdiction over a dispute between the plaintiffs and

Christina School District (the "District") on the basis of diversity of citizenship in that the

plaintiffs and the District are each citizens of different states and the amount in controversy

exceeds the sum of $75,000 exclusive of interest and costs.

         2.     Scientific Learning Corporation (the "Third-Party Defendant") is liable to

the District for training and consulting services paid for by the District which were not provided.

The training and consultant services were related to software procured by the District pursuant to a Master Lease Purchase Agreement between Ed Beck & Associates, Inc. and the District, dated September 12, 2003 (the "Agreement"). The plaintiffs in this case are the assignees of Ed Beck & Associates, Inc., through a series of assignments. The claim asserted in this Third-Party Complaint arises out of the same facts and circumstances as those of the Amended Complaint so that the Court may exercise supplemental jurisdiction over it pursuant to the provisions of 28 U.S.C. § 1367(a).

3.      Third-Party Defendant Scientific Learning Corporation may be served at 300 Frank H. Ogawa Plaza, Suite 500, Oakland, CA  94612.

### CLAIMS FOR RELIEF

4.      Plaintiffs filed an amended complaint against the District in this action. A copy of the plaintiffs' amended complaint is attached to this Third-Party Complaint as Exhibit A.

5.      In October, 2004, the District paid to the Third-Party Defendant $333,380 for training and consultant services.

6.      The Agreement can be terminated pursuant to Section 6 in the event there are insufficient funds for the District to make annual payments. On August 17, 2006, the District provided notice of intent to terminate the Agreement. As a result of the termination of the Agreement, the aforementioned training and consultant services will not be fully rendered.

7.      The Third-Party Defendant is liable to the District for the unrendered training and consultant services.

### COUNT I. UNJUST ENRICHMENT

8.      The District repeats and realleges paragraphs 1-7 as if set forth fully herein.

9.    The Third-Party Defendant is unjustly enriched by retaining sums for training and consultant services despite the fact the Agreement is terminated.

### PRAYER FOR RELIEF

WHEREFORE, the District demands judgment against the Third-Party Defendant for the unrendered training and consultant services in an amount to be proven at trial (approximately $220,031).

MORRIS JAMES LLP

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900/5849
Attorneys for Defendant and Third-Party Plaintiff
    Christina School District

Dated:  June 29, 2007

1583437/1

# EXHIBIT A

FEB 2 5 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**HAROLD TOLLIVER**, an individual;
**JAMES MCCRINK**, an individual;
**FEDERATED BANK**, an Illinois bank;
**LARRY KOLKO**, an individual;
**RAMONA ROBERSON**, an individual;      Civil Action No.  06-796-***
**JANICE FAYHEE**, an individual; and
**JACQUELINE BEIRNES**, an individual;

       Plaintiffs,

v.

**CHRISTINA SCHOOL DISTRICT**,

       Defendant.

---

### FIRST AMENDED COMPLAINT

Plaintiff investors, by and through their undersigned attorneys, state their First Amended Complaint as follows:

### I. INTRODUCTION

Despite having promised to do "all things lawfully within its power to obtain, maintain, and properly request and pursue funds" for the payment of a multi-year educational software lease, Defendant Christina School District elected to breach the agreement by not making the required payment on July 15, 2006. When pressed for the past-due payment, the School District attempted to terminate the agreement in violation of its express provisions. As a result of the School District's breach and attempted improper termination, the Court should award Plaintiffs their damages in an amount to be proven at trial.

## II. PARTIES, JURISDICTION, AND VENUE

1.  Harold Tolliver is a citizen of the state of Illinois who resides in Alsip, Illinois.

2.  James McCrink is a citizen of the state of Nevada in Las Vegas, Nevada.

3.  Larry Kolko is a resident of Illinois who resides in Linclonwood, Illinois.

4.  Ramona Roberson is a is a resident of Illinois who resides in Champaign, Illinois.

5.  Janice Fayhee is a resident of the state of Illinois who resides in Glencoe, Illinois.

6.  Jacqueline Beirnes is a resident of the state of Massachusetts who resides in Harwich Point, Massachusetts.

7.  Federated Bank is a bank organized and existing pursuant to the laws of the state of Illinois with its principal place of business in Onarga, Illinois.

8.  The forgoing individuals are collectively referred to herein as the "Investors."

9.  Defendant Christina School District represented that it was a body corporate and politic existing under the laws of the state of Delaware and has a principal place of business at 600 North Lombard Street, Wilmington, Delaware, 19801.

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over the parties because complete diversity exists between Investors and Defendant and the amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction over Defendant School District because it resides within this district.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because the School District is subject to this Court's personal jurisdiction.

### III.    FACTUAL BACKGROUND

**A.  The Lease Agreement.**

13. In 2003 the School District was searching for computer software to aid in student development.

14. As a result of that search, it selected software created and sold by Scientific Learning. Three parties were primarily involved in this transaction. The School District, which needed funding to obtain the software, Ed Beck & Associates, Inc. ("EBA"), an entity that coordinates funding for, among others, public schools, and Scientific Learning, the company that agreed to provide the software and support.

15. The School District and EBA ultimately executed a Master Lease Agreement on September 12, 2003 (the "Agreement") establishing the terms by which the School District acquired the software.

16. The School District elected to finance the software over several years. The Agreement automatically renews every fiscal year unless the School District gives notice 90 days prior to the end of the School District's current fiscal year. Exhibit 1, Agreement, at ¶ 1. The only bases on which the School District may terminate the Agreement are those set forth in paragraph 6 of the Agreement, which is discussed below. Id. at ¶¶ 1, 2, 6.

17. In order to comply with Delaware law concerning public entities (including schools) and their debt, continuation of the Agreement for any fiscal year was contingent upon the School District annually obtaining funds from which payments on the contract would be made. However, the School District's obligation to make the payments was "absolute," except as set forth in paragraph 6. Specifically, the School district committed to do

> all things lawfully within its power to obtain, maintain and
> properly request and pursue funds from which the Lease Payments
> may be made, including making provision for such payments to the

> extent necessary in each budget submitted for the purpose of
> obtaining funding, using its bona fide best efforts to have such
> portion of the budget approved and exhausting all available
> administrative reviews and appeals in the event such portion of the
> budget is not approved.  Exhibit 1, Agreement, at ¶ 2.

The Agreement automatically renews at the end of each fiscal year unless the School District

gives written notice not less than 90 days prior to the end of its fiscal year, July 15, of its intent

to terminate.

18. Paragraph 6 further discusses the School District's obligations under the Agreement

and sets forth the grounds by which it may lawfully terminate.  Specifically, that paragraph states

in relevant part:

> Notwithstanding anything contained in this Lease to the contrary,
> in the event no funds or insufficient funds are appropriated and
> budgeted or are otherwise unavailable by any means whatsoever in
> any fiscal period for Lease Payments due under this Lease, Lessee
> will immediately notify the Lessor or its assignee of such
> occurrence and this Lease shall terminate on the last day of the
> fiscal period for which appropriations were received without
> penalty or expense to Lessee of any kind whatsoever, except as to
> the portions of Lease Payments herein agreed upon for which
> funds shall have been appropriated and budgeted or are otherwise
> available....Notwithstanding the foregoing, and to the extent
> permitted by law, Lessee agrees (i) that it will not cancel this Lease
> under the provisions of this Section if any funds are appropriated
> to it, or by it, for the intended use of the Software for the period in
> which such termination occurs of the next succeeding fiscal period
> thereafter, and (ii) that it will not during the Lease Term give
> priority in the application of funds for the acquisition, retention or
> operation of any other functionally similar Software.  To the extent
> permitted by law, this Section will not be construed so as to permit
> Lessee to terminate this Lease in order to acquire or lease any other
> Software or to allocate funds directly or indirectly to perform
> essentially the same application for which the Software is intended.
> Exhibit 1, Agreement, at ¶ 6.

19. At the time it executed the Agreement, and at all times since then, the School District

has received funding from the federal government under Title I of the "No Child Left Behind"

program.

4

20. Upon information and belief, the School District's federal funding under Title 1 of the "No Child Left Behind" program was not reduced this year.

21. Between 2003 and 2006 the School District performed as required under the Agreement. Furthermore, the School District reported great success with the software and repeatedly reaffirmed that the software was "essential" to the performance of its obligations to its citizens.

22. In 2005 the School District reaffirmed the Agreement and the parties agreed to a new payment schedule as permitted and contemplated by the Agreement.

23. Pursuant to the new payment schedule, the School District was obligated to pay $537,691.00 on July 15 of 2005, and if not terminated in accordance with the terms of the Agreement, each year thereafter through 2008.

24. On June 29, 2005, EBA, the original Lessor under the Agreement, assigned all right, title and interest in the Agreement to Salem Capital Group, who in turn assigned all right, title and interest in the Agreement to the Investors, all in accordance with the terms of the Agreement.

**B.     The School District's Breach.**

25. On information and belief in early 2006 there was a change of management at the School District.

26. Apparently, notwithstanding the great success enjoyed by the School District with the software, new management decided it did not want to use the software anymore.

27. The School District failed to make the required payment of $537,691.00 on July 15, 2006.

28. When the Investors contacted the School District concerning its breach, the School District attempted to terminate the Agreement in violation of the terms of the Agreement. On

information and belief the School District did not do "all things lawfully within its power to

obtain, maintain and properly request and pursue funds from which the Lease Payments may be

made...."

29. On information and belief, the School District could have allocated the federal

funding previously used to pay for the software to make the required lease payment on July 15,

2006, but instead chose not to.

30. The School District did not provide notice of its decision to attempt to terminate the

Agreement ninety days prior to the end of its fiscal year, as required by the Agreement.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Breach of Contract )

31. The Investors incorporate the foregoing paragraphs as if fully set forth herein.

32. The School District entered into the Agreement with EBA on September 12, 2003.

33. The Investors are the correct and lawful assignees of the Lessor's right, title and

interest under the Agreement.

34. Pursuant to the terms of the Agreement, as amended from time to time, the School

District was obligated to make payments for the lease of certain software.

35. The only basis by which the School District could terminate the Agreement is set

forth in paragraph 6 of the Agreement.

36. None of the contingencies set forth in paragraph 6 of the Agreement have occurred.

37. The School District was required to make a lease payment in the amount of

$537,691.00 on July 15, 2006.

38. The School District did not make the required payment on July 15, 2006.

6

39. The School District did not provide the required notice 90 days prior to the end of its fiscal year as required by paragraph 1 of the Agreement.

40. On information and belief the School District did not do "all things lawfully within its power to obtain, maintain and properly request and pursue funds from which the Lease Payments may be made...."

41. On information and belief, the School District could have allocated the federal funding previously used to pay for the software to make the required lease payment on July 15, 2006, but instead chose not to.

42. The School District breached the Agreement.

43. The School District's breach has caused the Investors to be damaged in an amount to be proven at trial, but not less than $537,691.00.

44. Pursuant to the terms of the Agreement, the Investors are entitled to recover damages, costs, and attorneys' fees incurred as a result of the School District's breach.

### SECOND CLAIM FOR RELIEF
### (Breach Of The Implied Covenant Of Good Faith And Fair Dealing)

45. The Investors incorporate the foregoing paragraphs as if fully set forth herein.

46. The School District entered into the Agreement with EBA on September 12, 2003.

47. The Investors are the correct and lawful assignees of the Lessor's right, title and interest under the Agreement.

48. Pursuant to the terms of the Agreement, as amended from time to time, the School District was obligated to make payments for the lease of certain software.

49. The only basis by which the School District could terminate the Agreement is set forth in paragraph 6 of the Agreement.

50. None of the contingencies set forth in paragraph 6 of the Agreement have occurred.

51. The School District was required to make a lease payment in the amount of $537,691.00 on July 15, 2006.

52. The School District did not make the required payment on July 15, 2006.

53. On information and belief the School District did not do "all things lawfully within its power to obtain, maintain and properly request and pursue funds from which the Lease Payments may be made...."

54. On information and belief, the School District could have allocated the federal funding previously used to pay for the software to make the required lease payment on July 15, 2006, but instead chose not to.

55. All contracts in Delaware contain an implied covenant of good faith and fair dealing.

56. The School District's failure to do all things lawfully within its power to assure funding for the lease payments is a breach of the implied covenant of good faith and fair dealing.

57. The School District's breach of the implied covenant of good faith and fair dealing has caused the Investors damages in an amount to be proven at trial.

## V.  PRAYER FOR RELIEF

WHEREFORE, the Investors pray that this Court enter judgment in their favor on all counts and award them the following relief:

1.    The lease payment due from School District for the 2006-2007 school year;

2.    Interest at the rate provided in the Agreement, or by law, whichever is greater;

3.    Costs and attorneys' fees incurred in bringing this action;

4.    Any other relief the Court deems just and appropriate.

8

Respectfully submitted this 23rd day of February 2007.

CONNOLLY BOVE LODGE & HUTZ LLP

Patricia Smink Rogowski (No. 2632)
Paul E. Crawford (No. 493)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
Telephone:  (302) 658-9141

**ATTORNEYS FOR PLAINTIFFS**

DORSEY & WHITNEY LLP
Stephen D. Bell
Scott P. Sinor
Republic Plaza Building, Suite 4700
370 17th Street
Denver, CO 80202-5647
Telephone: (303) 629-3400

# Exhibit 1

MASTER LEASE PURCHASE AGREEMENT

This MASTER LEASE PURCHASE AGREEMENT (the "LEASE") is by and between Ed Beck & Associates, Inc. a California corporation ("LESSOR") and Christina School District  a branch, agency, or political subdivision of the State of Delaware ("LESSEE").

WITNESSETH:

Lessor hereby demises, leases and lets to Lessee and Lessee hereby rents, leases and hires from Lessor, the Software described in any Exhibit A now or hereafter attached hereto (the "Software") in accordance with the following terms and conditions of this Master Lease Purchase Agreement (the "Lease"). The terms "Exhibit A" (Equipment, Payment and Delivery and Acceptance Schedule) and "Exhibit B" (Essential Use/Source of Funds Letter) as used herein shall mean all such consecutively lettered Exhibits that are or may be in the future attached as exhibits to and be governed by the terms of this Lease.

   1.  Term.  This Lease shall become effective upon the execution by Lessee and Lessor. The term of this Lease ("Lease Term") shall commence on the date the Software is accepted for delivery by Lessee pursuant to Section 3 hereunder and the Lease Term shall continue until all payments are made in accordance with all Exhibit A's attached to this Lease, subject to the provisions of Section 6 hereunder. This Lease will be automatically renewed at the end of each fiscal year unless the Lessee gives written notice to Lessor not less than ninety (90) days prior to the end of the Lessee's fiscal year of Lessee's intention to terminate this Lease pursuant to Section 6 hereunder.

   2.  Lease Payments.  Lessee agrees to pay to Lessor or its assignee the Lease Payments, including the interest portion, equal to the amounts specified in Exhibit A (the "Lease Payments"). The Lease Payments will be payable without notice or demand at the office of the Lessor (or such other place as Lessor or its assignee may from time to time designate in writing.), and will commence on the Commencement Date as set forth in Exhibit A and thereafter in accordance with Exhibit A.  Lessee shall pay to Lessor, on demand, interest at the rate of 10% (ten percent) per annum or the highest lawful rate, whichever is less, from the due date on the amount of any rental payment (the "Payment Date") or other payment not made when due under this Lease, from the date due until the date on which such payment is received by Lessor. Except as specifically provided in Section 6 hereof, Lessee's obligation to make Lease Payments will be absolute and unconditional in all events and will not be subject to any setoff, defense, counterclaim, or recoupment for any reason whatsoever including, without limitation, any failure of the Software to be delivered or installed, any defects, malfunctions, breakdowns or infirmities in the Software or any accident, condemnation or unforeseen circumstances.

         Lessee reasonably believes that funds can be obtained sufficient to make all Lease Payments during the Lease Term and hereby covenants that it will do all things lawfully within its power to obtain, maintain and properly request and pursue funds from which the Lease Payments may be made, including making provisions for such payments to the extent necessary in each budget submitted for the purpose of obtaining funding, using its bona fide best efforts to have such portion of the budget approved and exhausting all available administrative reviews and appeals in the event such portion of the budget is not approved. It is Lessee's intent to make Lease Payments for the full Lease Term if funds are legally available therefor and in that regard Lessee represents that the use of the Software is essential to its proper, efficient and economic operation. Lessor and Lessee understand and intend that the obligation of Lessee to pay Lease Payments hereunder shall constitute a current expense of Lessee and shall not in any way be construed to be a debt of Lessee in contravention of any applicable constitutional or statutory limitation or requirement concerning the creation of indebtedness by Lessee, nor shall anything contained herein constitute a pledge of the general tax revenues, funds or monies of Lessee.

   3.  Delivery and Acceptance.  Lessor will cause the Software to be delivered to Lessee at the location specified in Exhibit A ("Software Location"). Lessee will pay all transportation and other costs, if any, incurred in connection with the delivery of the Software. Lessee will accept the Software as soon as it has been delivered. Lessee will evidence its acceptance for delivery of the Software by executing and delivering to Lessor a Delivery and Acceptance Certificate in the form provided by Lessor and attached hereto as Exhibit A.

Lessee acknowledges that if all or part of the funds provided by Lessor under this Lease are not needed immediately by the Lessee for payment of Software invoices, Lessor may escrow funds in U. S. government agency, insured investments or commercial paper rated A1 by Standard & Poor's or P1 by Moody's Investor's Services for a term not to exceed 6 months. Lessee further acknowledges and agrees that all earnings on such funds constitute interest due Lessor pursuant to this Lease.

4. <u>Ownership, Liens.</u> Lessor, its Assigns and Lessee acknowledge and agree that each of the Software is subject to the exclusive proprietary rights of Scientific Learning Corporation ("SciLearn") or the Licensor thereof and that neither Lessee nor any assignee shall have ownership rights in the Software. Neither Lessee nor any assignee shall have right, title or interest in (i) SciLearn Software except as set forth in this Agreement and in the Order Form for shrink-wrap software products (as amended, renewed or extended from time to time including any addenda or exhibits thereto (the "Software License") and (ii) non-SciLearn Products except as provided in this Agreement or the license agreements from the licensors thereof ("Vendor Agreements") (the SciLearn License and Vendor Agreements are collectively the "License Agreements). Lessee shall at its expense keep the Software and each Lease clear of all liens, charges, claims and other encumbrances. In the event of default (as defined in Section15 herein) or in the event of non-appropriation of funds (as defined in Section 6 herein) any assignee will return to SciLearn any Software, which it may take into its possession. At the expiration of this lease, provided no event of default or non-appropriation has occurred and is continuing, and provided the Lease Agreement has not otherwise not been terminated, Lessee, having complied with all the terms of the Lease Agreement, will have the rights to a fully paid-up, perpetual Software License.

5. <u>Disclaimer of Warranties.</u> Lessee acknowledges and agrees that the Software is of a size, design and capacity selected by Lessee, that Assignee (as defined in Section 14 herein) is neither a manufacturer nor a vendor of such Software and that ASSIGNEE HAS NOT MADE, AND DOES NOT HEREBY MAKE, ANY REPRESENTATION, WARRANTY, OR COVENANT, EXPRESS OR IMPLIED, WITH RESPECT TO THE MERCHANTABILITY, CONDITION, QUALITY, DURABILITY, DESIGN, OPERATION, FITNESS FOR USE, OR SUITABILITY OF THE SOFTWARE IN ANY RESPECT WHATSOEVER OR IN CONNECTION WITH OR FOR THE PURPOSES AND USES OF LESSEE, OR ANY OTHER REPRESENTATION, WARRANTY, OR COVENANT OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT THERETO, AND ASSIGNEE SHALL NOT BE OBLIGATED OR LIABLE FOR ACTUAL, INCIDENTAL, CONSEQUENTIAL, OR OTHER DAMAGES OF OR TO LESSEE OR ANY OTHER PERSON OR ENTITY ARISING OUT OF OR IN CONNECTION WITH THE USE OR PERFORMANCE OF THE SOFTWARE AND THE MAINTENANCE THEREOF.

Lessor hereby assigns to Lessee during the Lease Term, so long as no Event of Default has occurred hereunder and is continuing, all manufacturer's warranties, if any, expressed or implied with respect to the Software, and Lessor authorizes Lessee to obtain the customary services furnished in connection with such warranties under the Software License. Lessee's sole remedy for the breach of any such manufacturer's warranty shall be against the manufacturers of the Software, and not against assignee, nor shall such matter have any effect whatsoever on the rights and obligations of Lessor with respect to this Lease, including the right to receive full and timely payments hereunder.

6. <u>Non-Appropriation of Funds; Non-Substitution.</u> Notwithstanding anything contained in this Lease to the contrary, in the event no funds or insufficient funds are appropriated and budgeted or are otherwise unavailable by any means whatsoever in any fiscal period for Lease Payments due under this Lease, Lessee will immediately notify the Lessor or its assignee of such occurrence and this Lease shall terminate on the last day of the fiscal period for which appropriations were received without penalty or expense to Lessee of any kind whatsoever, except as to the portions of Lease Payments herein agreed upon for which funds shall have been appropriated and budgeted or are otherwise available. In the event of such termination, Lessee agrees to peaceably surrender possession of the Software to SciLearn the date of such termination, packed for shipment in accordance with manufacturer's specifications and freight prepaid and insured to any location in the continental United States designated by SciLearn. Lessor will have all legal and equitable rights and remedies to take possession of the Software. Notwithstanding the foregoing, and to the extent permitted by law, Lessee agrees (i) that it will not cancel this Lease under the provisions of this Section if any funds are appropriated to it, or by it, for the intended use of the Software for the period in which such termination occurs of the next succeeding fiscal period thereafter, and (ii) that it will not during the Lease Term give priority in the application of funds for the acquisition, retention or operation of any other functionally similar Software. To the extent permitted by law, this Section will not be construed so as to permit Lessee to terminate this Lease in order to acquire or lease any other Software or to allocate funds directly or indirectly to perform essentially the same application for which the Software is intended.

7. Certification and Authorization. Lessee represents, covenants and warrants that it is a state, or a political subdivision thereof, or that Lessee's obligation under this Lease constitutes an obligation issued on behalf of a state of political subdivision thereof, such that any interest derived under this Lease will qualify for exemption from Federal income taxes under Section 103 of the Internal Revenue Code. Lessee further warrants that this Lease represents a valid deferred payment obligation for the amount herein set forth and that Lessee, having the legal capacity to enter into the same, is not in contravention of any Town/City, District, County, or State statute, rule, regulation, or other governmental provision. Lessee hereby determines and declares that Lessee (and any entity acting on behalf of or subordinate to Lessee) does not reasonably anticipate to issue in the calendar year in which the Lease was executed, tax-exempt obligations in aggregate principal amount greater than $10,000,000 (exclusive of private activity bonds as defined in the Code). Lessee hereby specifically designates the Lease as a "qualified tax-exempt obligation" within the meaning of Section 265(b) of the Code, and covenants that it will not in any event designate in the calendar year in which the Lease was executed more than $10,000,000 of its obligations as such "qualified tax-exempt obligations". Lessee agrees that (i) it will do or cause to be done all things necessary to preserve and keep the Lease in full force and effect; (ii) it has complied with all bidding requirements where necessary and by due notification presented this Lease for approval and adoption as a valid obligation on its part; and (iii) it has sufficient appropriations or other funds available to pay all amounts due hereunder for the current fiscal period; (iv) during the term of this Lease, the Software will be used by Lessee only for the purpose of performing one or more governmental or proprietary functions of Lessee consistent with the permissible scope of Lessee's authority and will not be used in a trade or business of any person or entity other than the Lessee; (v) Lessee will take no action that will cause the interest portion of any Lease Payment to become includable in gross income for purposes of federal income taxation under the Code.

8. Filings. Lessee agrees to timely file the appropriate IRS form 8038-G.

9. Alterations. Alterations, additions or improvements to the Software may be made consistent with the terms of the Software License.

10. Location; Inspection. The Software may be used and maintained in any location(s) as permitted by the software license. Lessor will be entitled to enter upon the Software Location or elsewhere during reasonable business hours to inspect the Software or observe its use and operation.

11. Liens and Taxes. Lessee shall pay, when due, all charges and taxes (local, state and federal) which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession or use of the Software, excluding however, all taxes on or measured by Lessor's income. If Lessee fails to pay said charges and taxes when due, Lessor shall have the right, but shall not be obligated, to pay such charges or taxes. Lessee shall reimburse Lessor therefor.

12. Risk of Loss; Damage; Destruction. Lessee assumes all risk of loss of or damage to the Software from any cause whatsoever, and no such loss of or damage to the Software nor unfitness or obsolescence thereof shall relieve Lessee of the obligation to make Lease Payments or to perform any other obligation under this lease. In the event of damage to any item of Software, Lessee will maintain adequate backup of all software.

13. Indemnification. To the extent permitted by law, Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, proceedings, expenses, damages or liabilities, including attorney's fees and court costs, arising in connection with the Software, including, but not limited to, its selection, purchase, delivery, possession, use, operation, rejection, or return and the recovery of claims under insurance policies thereon. The indemnification arising under this Section shall continue in full force and effect notwithstanding the full payment of all obligations under this Lease or the termination of the Lease Term for any reason.

14. Assignment. Without Lessor's prior written consent, Lessee will not either (i) assign, transfer, pledge, hypothecate, grant any security interest in or otherwise dispose of this Lease of the Software or any interest in this Lease of the Software or (ii) sublet or lend the Software or permit it to be used by anyone other than Lessee, or Lessee's employees for the governmental purposes of Lessee. Lessor may assign its rights, title and interest in and to this Lease and any documents executed with respect to this Lease and /or grant or assign an interest in this Lease. Any such assignees shall have all of the rights of Lessor under this Lease. Subject to the foregoing, this Lease inures to the benefit of and is binding upon the heirs, executors, administrators, successors and assigns of the parties hereto, Lessee covenants and agrees not to assert against the assignees any claims or defenses by way of abatement setoff, counterclaim, recoupment or the like which Lessee may have against Lessor. Upon assignment of Lessor's interests herein, Lessor will cause written notice of such assignment to be sent to Lessee which will be sufficient if it discloses the name of the assignee and address to which further payments hereunder should be made.

In compliance with Section 149 (a) of the Internal Revenue Code, Lessee hereby designates the Lessor to be its agent for the purposes of maintaining a book entry system identifying the ownership or interests in and to this Lease and the Lessor hereby accepts its duties as agent hereunder.

Lessee acknowledges that Lessor may enter into a Trust Agreement with a national banking association or a state banking association to be selected by Lessor for the purpose of establishing funds and accounts for the payment of the acquisition price of the Software to the vendor, for prepayment of the Lease prior to maturity, for damage or condemnation of the Software and for receipt of rental payments and other amounts due from Lessee pursuant to the Lease and for distribution of such amounts to holders of Certificates of Participation, as provided for in the Trust Agreement.

15. Event of Default. The term "Event of Default" as used herein, means the occurrence of any one or more of the following events: (i) Lessee fails to make any Lease Payment (or any other payment) as it becomes due in accordance with the terms of the Lease, and any such failure continues for ten (10) days after the due date thereof; (ii) Lessee fails to perform or observe any other covenant, condition, or agreement to be performed or observed by it hereunder and such failure is not cured within twenty (20) days after written notice thereof by Lessor, (iii) the discovery by Lessor that any statement, representation, or warranty made by Lessee in this Lease or in writing ever delivered by Lessee pursuant hereto or in connection herewith is false, misleading or erroneous in any material respect; (iv) proceedings under any bankruptcy, insolvency reorganization or similar legislation shall be instituted against or by Lessee, or a receiver or similar officer shall be appointed for Lessee or any of its property, and such proceedings or appointments shall not be vacated, or fully stayed, within twenty (20) days after the institution or occurrence thereof; or (v) an attachment, levy or execution is threatened or levied upon or against the Software.

16. Remedies. Upon the occurrence of an Event of Default, as long as such Event of Default is continuing, Lessor may, at its option, exercise any one or more of the following remedies: (i) by written notice to Lessee, declare an amount equal to all amounts then due under the Lease, and (ii) by written notice to the Lessee, request Lessee to (and Lessee agrees that it will), at Lessee's expense, promptly return the Software to SciLearn in the manner set forth in Section 5 hereof, or Lessor, at its option, may enter upon the premises where the Software is located and take immediate possession of and remove the same; (iii) terminate the license granted to Lessee and/or to withhold support, consulting and maintenance or other services provided under or in connection with the software license; and (iv) exercise any other right, remedy or privilege which may be available to it under applicable law of the state of the Software Location or any other applicable law or proceed by appropriate court action to enforce the terms of the Lease or to recover damages for the breach of this Lease or to rescind this Lease as to any or all of the Software. In addition Lessee will remain liable for all covenants and indemnities under this Lease and for all legal fees and other costs and expenses, including court costs, incurred by Lessor with respect to the enforcement of any of the remedies listed above or any other remedy available to Lessor.

17. Purchase Option. Lessee shall have the option to purchase a perpetual license in this Lease and the Software on any applicable Payment Date providing: (i) Lessee is not in default under the Lease; (ii) Lessee gives notice to Lessor of its intention to exercise this option at least sixty (60) days prior to the Payment Date on which the option is to be exercised; (iii) Lessee has complied with all applicable laws concerning acquisition of license; (iv) there is a specific purchase option shown in Exhibit A on that Payment Date and (v) on the applicable payment date, the Lessee shall deposit with the Lessor an amount equal to all Lease Payments and any other amounts then due or past due (including but not limited to the Lease Payment due on the applicable Payment Date) together with the applicable Purchase Option Price set forth in Exhibit A. The closing shall be on the Payment Date or the first business day preceding the Payment Date at the office of the Lessor or such other place as the Lessor may direct.

18. Section Headings. All section headings contained herein are for the convenience of reference only and are not intended to define or limit the scope of any provision of this Lease.

19. Governing Law. This Lease shall be construed in accordance with, and governed by the laws of, the state of the Software location.

20. Delivery of Related Documents. Lessee will execute or provide, as requested by Lessor, such other documents and information as are reasonably necessary with respect to the transaction contemplated by this Lease.

21. Entire Agreement; Waiver. This Lease, together with the Delivery and Acceptance Certificate and other attachments hereto, and other documents or instruments executed by Lessee and Lessor in connection herewith, shall constitute the entire agreement between the parties with respect to the lease of the Software, and this Lease shall not be modified, amended, altered, or changed except with the written consent of Lessee and Lessor. Any provision of this Lease found to be prohibited by law shall be ineffective to the extent of such prohibition without

invalidating the remainder of the Lease. The waiver by Lessor of any breach by Lessee of any term, covenant or condition hereof shall not operate as a waiver of any subsequent breach thereof.

22. Use of Software. The Lessee will use the Software in a manner contemplated by the Software License, this Lease and the Essential Use/Source of Funds Letter and shall comply with all applicable laws, ordinances, claims, damages, fees and charges arising out of its possession, use or maintenance. The Lessee, at its expense, shall be responsible for and shall pay all charges for the maintenance of the Software.

23. Taxes and Other Government Charges. In the event the Software is found to be subject to taxation in any form, the Lessee will pay as the same respectively become due, all taxes and governmental charges of any kind whatsoever together with any interest and penalties that may at any time be lawfully assessed or levied against or with respect to the Software including but not limited to the ownership, leasing, rental, sale, purchase, or possession thereof (excluding however, all taxes on or measured by the Lessor's or its assigns' income) and any Software or other property acquired by the Lessee in substitution for, as a renewal or replacement of, or as a modification, improvement, or addition to the Software, as well as all other charges incurred in the operation, maintenance, use and upkeep of the Software; provided that with respect to any governmental charges that may lawfully be paid in installments over a period of years, the Lessee shall be obligated to pay only such installments as are required to be paid during the Lease Term. Upon the expiration or earlier termination of this Lease, the Lessee shall pay to the Lessor or its assigns any ad valorem, personal property or excise taxes assessed but not yet due and payable.

24. Notices. All notices to be given under this Lease shall be make in writing and mailed by certified mail, return receipt requested, to the other party at its address set forth herein or at such address as the party may provide in writing from time to time. Any such notice shall be deemed to have been received five (5) days subsequent to mailing.

IN WITNESS WHEREOF, the parties have executed this Lease as of the 12th day of September 2003.

LESSEE: Christina School District

By: _____

Name (print): _JOSEPH WISE_

Title: _SUPERINTENDENT_

LESSOR: Ed Beck & Associates, Inc.

By: _____

Name (print): _GERALD S. MISUREK_

Title: _EXEC VP_


ADDRESS FOR NOTICES UNDER THIS LEASE:

83 East Main Street

Newark, DE 19711

ADDRESS FOR NOTICE UNDER THIS LEASE:

31091 Via Consuelo

Coto De Caza, CA 92679


Lessee Contact: _DAVID SUNDSTROM_

Telephone Number: _302 454 1526_

Lessor Contact: Gerald Misurek

Telephone Number: 770- 205-6055

**EXHIBIT A**

**EQUIPMENT SCHEDULE**

Master Lease Purchase Agreement dated: September 12, 2003.                                          Schedule Number: 003

This Equipment Schedule dated as of June 23, 2005 is being executed by Ed Beck & Associates, Inc. ("Lessor"), and Christina School District ("Lessee") as a supplement to, and is hereby attached to and made a part of that certain Master Lease Purchase Agreement dated as of September 12, 2003 (the "Lease"), between Lessor and Lessee.
This Schedule incorporates a re-leasing of the products (as listed on Exhibit OF-1 and Exhibit OF-2) and a re-financing of the remaining rental payments due under the Schedule No 002 dated June 24, 2004 between Lessor and Lessee and also includes additional software products (as listed on Exhibit OF-3) from Scientific Learning Corporation. Upon acceptance of this Schedule by Lessor, Schedule No 002 will be retired as having been paid in full.

Lessor hereby agrees to lease to Lessee under and pursuant to the Lease, the following items of software:

<u>Description</u>: Software products as described under Scientific Learning Corporation Order Forms as Exhibits OF-1, OF-2 and OF-3 attached hereto.

<u>Equipment Location</u>:                                                                  <u>Vendor</u>:

~~83 East Main Street~~ 600 N Lombard St                            Scientific Learning Corporation
~~Newark, DE 19711300~~ Wilmington De 19801                         Frank H. Ogawa Plaza, Suite 500
and locations authorized under the Order Forms                      Oakland, CA 94612-2040

---

**PAYMENT SCHEDULE**

LESSEE:          Christina School District

| PAYMENT | DATE | PAYMENT | INTEREST (included in payment) | EARLY TERMINATION PURCHASE OPTION |
|---------|------|---------|-------------------------------|-----------------------------------|
| 1. | July 15, 2005 | $537,691.00 | $5,913.03 | None |
| 2 | July 15, 2006 | $537,691.00 | $80,932.77 | $1,016,899.59 |
| 3. | July 15, 2007 | $537,691.00 | $55,408.13 | $517,941.79 |
| 4. | July 15, 2008 | $537,691.00 | $28,457.11 | $ 0 |

---

LESSOR:                                                          LESSEE:

ED BECK & ASSOCIATES, INC.                                       CHRISTINA SCHOOL DISTRICT

By:                                                              By:

Name (print): GERALD S. MISUREIC                                 Name (print): Ibram Giles

Title: EXEC VP                                                   Title: Chief Financial Officer

## EXHIBIT B

### ESSENTIAL USE/SOURCE OF FUNDS LETTER

Gentlemen:

This confirms and affirms that the Software described in the Schedule No 003 dated June 23, 2005 to the Master Lease Purchase Agreement dated September 12, 2003 (the "Lease") is essential to the function of the undersigned or to the service we provide to our citizens.

Further, we have an immediate need for, and expect to make immediate use of, substantially all such Software which is not temporarily or expected to diminish in the foreseeable future. Such Software will be used by us only for the purpose of performing one or more of our governmental or proprietary functions consistent with the permissible scope of our authority. Specifically, such Software is intended to be used by us for the following purposes or functions:

Lessee is acquiring the referenced software from Scientific Learning for the primary purpose of: enhancing the reading, mathematics, and related skills of Lessee's students. Lessee is an educational institution whose charter is to educate students in academic and life skills, and Lessee represents that this software acquisition meets the essential use standards Lessee normally applies to acquisitions of products and services.

The estimated useful life of such Software based upon manufacturer's representations and our projected needs is 5 - 7 years.

Our source of funds for payments of the rent due under the Lease for the current fiscal year is _Federal Funds - N.C.L.B_

We expect and anticipate adequate funds to be available for all future Lease Payments due after the current fiscal year for the following reasons: _Continual of Federal Funds_

Very truly yours,

CHRISTINA SCHOOL DISTRICT

By: _[signature]_

Name (print): _Theresa Cokes_

Title: _C.F.O._

Date: June 23, 2005

## McVey, Janet

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Wednesday, October 17, 2007 4:03 PM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:06-cv-00796-*** Tolliver et al v. Christina School District Third Party Complaint |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was entered on 10/17/2007 at 4:02 PM EDT and filed on 10/17/2007
**Case Name:**       Tolliver et al v. Christina School District
**Case Number:**    1:06-cv-796
**Filer:**              Christina School District
**Document Number:** 22

**Docket Text:**
THIRD PARTY COMPLAINT against Scientific Learning Corporation - filed by Christina School District.(ntl)

**1:06-cv-796 Notice has been electronically mailed to:**
Patricia Smink Rogowski progowski@cblh.com, dkt@cblh.com, vmurphy@cblh.com
David H. Williams dwilliams@morrisjames.com, JMcVey@morrisjames.com
James H. McMackin, III JMcMackin@MorrisJames.com, jmcvey@morrisjames.com

**1:06-cv-796 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=10/17/2007] [FileNumber=460941-0
] [be39d5e28cb203557906ebc6d30bc3f25f8e4ecbf1adb86122615ea73185da199c7
7bd6d3562a41c75de8f4672bc92eaab781da64767bd9bf9a2c55a1a692890]]

10/18/2007

# EXHIBIT C

 **UNITED STATES POSTAL SERVICE**®

Track & Confirm        FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **RB42 0634 533U S**
Detailed Results:

- **Delivered, November 14, 2007, 7:22 am, OAKLAND, CA 94604**
- **Acceptance, October 29, 2007, 5:26 pm, WILMINGTON, DE 19801**

( < *Back* )              ( *Return to USPS.com Home >* )              ( *Go >* )

**Track & Confirm**

Enter Label/Receipt Number.

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( *Go >* )

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

# EXHIBIT D

| Registered No. | | Date Stamp |
|---|---|---|

R.B. 420 634 5334S

| | Reg. Fee $ | Special Delivery $ |
|---|---|---|
| To Be Completed By Post Office | Handling Charge $ | Return Receipt $ |
| | Postage $ | Restricted Delivery $ |
| | Received by | |

CB

Customer Must Declare Full Value $

☐ With Postal Insurance
☐ Without Postal Insurance

Domestic Insurance Is Limited To $25,000; International Indemnity Is Limited (See Reverse)

**To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed**

FROM
James H. McMackin III
Morris James LLP  P.O. Box 2306
Wilmington DE 19899

TO
Scientific Learning Corporation
300 Frank H. Ogawa Plaza, Suite 500
OAKLAND  CA  94612

PS Form **3806**, February 1995    **Receipt for Registered Mail**    *(Customer Copy)*
*(See Information on Reverse)*