# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HAROLD TOLLIVER, an individual; JAMES MCCRINK; an individual; MATT CLARK; an individual; LARRY KOLKO, an individual; RAMONA ROBERSON, an individual; JANICE FAYHEE, an individual; and JACQUELINE BEIRNES, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>CHRISTINA SCHOOL DISTRICT,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 06-796-***<br>)<br>)<br>)<br>) |
| CHRISTINA SCHOOL DISTRICT,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>SCIENTIFIC LEARNING CORPORATION,<br><br>    Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SCIENTIFIC LEARNING CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Jennifer Gimler Brady (#2874)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
jbrady@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Third-Party Defendant*
*Scientific Learning Corporation*

Dated: December 13, 2007
835941/32439

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS .............................................................................1

SUMMARY OF ARGUMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

ARGUMENT ...............................................................................................................................4

I.      LEGAL STANDARDS .....................................................................................................4

        A.    MOTION TO DISMISS STANDARD.......................................................................4

        B.    THE COURT MAY CONSIDER MATTERS OUTSIDE THE
              PLEADINGS WITHOUT CONVERTING A MOTION TO DISMISS
              TO A MOTION FOR SUMMARY JUDGMENT ......................................................5

II.     THE DISTRICT'S THIRD-PARTY COMPLAINT FAILS TO STATE A
        CLAIM UPON WHICH RELIEF CAN BE GRANTED .....................................................6

CONCLUSION.............................................................................................................................8

## TABLE OF AUTHORITIES

**CASES**

Page(s)

*Bakerman v. Sidney Frank Importing Co., Inc.*,
   C.A. No. 1844-N, 2006 WL 3927242 (Del. Ch. Oct. 10, 2006)...............................................6

*Bartholomew v. Fischl*,
   782 F.2d 1148 (3d Cir. 1986)...............................................................................................4-5

*Bell Atlantic Corp. v. Twombly*,
   167 L. Ed. 2d 929, 127 S.Ct. 1955 (2007)................................................................................5

*Doug Grant, Inc. v. Great Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000).....................................................................................................5

*Finkel's, Inc. v. Shields Development Co.*,
   C.A. No. 5981, 1980 WL 273552 (Del. Ch. June 2, 1980) ......................................................7

*Houlihan v. Sussex Technical School District*,
   461 F. Supp. 2d 252 (D. Del. 2006).........................................................................................5

*In re Bayside Prison Litig.*,
   190 F. Supp. 2d 755 (D.N.J. 2002).........................................................................................5

*In re Quintus Corporation*,
   353 B.R. 77 (Bankr. D. Del. 2006) .........................................................................................6

*In re Rockefeller Center Properties, Inc. Securities Litig.*,
   184 F.3d 280 (3d Cir. 1999).....................................................................................................5

*Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*,
   C.A. No. 94C-03-189-WTQ, 1997 WL 529587 (Del. Super. Jan. 29, 1997)............................6

*Liberto v. Bensinger*,
   C.A. No. 1411-K, 1999 WL 1313662 (Del. Ch. Dec. 28, 1999) ..............................................7

*Morschbach v. Household Int'l Inc.*,
   C.A. No. 01-262 GMS, 2002 WL 187514 (D. Del. Feb. 6, 2002)............................................6

*Resource Ventures, Inc. v. Resources Management Int'l, Inc.*,
   42 F. Supp. 2d 423 (D. Del. 1999)...........................................................................................6

*Seko Air Freight, Inc. v. Transworld Systems, Inc.*,
   22 F.3d 773 (7th Cir. 1994) .....................................................................................................7

**STATUTES, RULES & REGULATIONS**

Fed. R. Civ. P. 12(b)(6).........................................................................................................1, 4, 6, 8

Third-Party Defendant Scientific Learning Corporation ("SLC") moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Third-Party Complaint filed by Defendant/Third-Party Plaintiff Christina School District (the "District") for failure to state a claim upon which relief can be granted.

## NATURE AND STAGE OF PROCEEDINGS

The initial Complaint (D.I. 1) was filed by individual Plaintiffs Roberson, Fayhee, Beirnes, Tolliver, McCrink, Clark, and Kolko on December 28, 2006.  Subsequent to the initial filing, the Complaint was amended twice (D.I. 6, 24).  The Second Amended Complaint (D.I. 24), filed by Plaintiffs Tolliver, McCrink, Kolko, Roberson, Fayhee, Beirnes, and Federated Bank, alleges breach of contract, breach of implied covenant of good faith, and unjust enrichment against the District, and contains a common law fraud count against the District and individual Defendants Giles, Sundstrom, and Wise.  The District answered the Second Amended Complaint on November 15, 2007.  D.I. 36.

On June 29, 2007, the District moved for leave to file a Third-Party Complaint against SLC (D.I. 17).  The Motion was granted on October 17, 2007 (D.I. 21), and the Third-Party Complaint (D.I. 22) was deemed filed the same day.  The Third-Party Complaint contains only one count: a claim for unjust enrichment against SLC.  *See* D.I. 22, ¶¶ 8, 9.

On November 13, 2007, the Court so ordered a Stipulation to extend SLC's time to answer, move or otherwise respond to the Third-Party Complaint to December 13, 2007.  *See* D.I. 33.  This is the Opening Brief in Support of SLC's Motion to Dismiss the District's Third-Party Complaint.

## SUMMARY OF ARGUMENT

The relationship between SLC and the District is governed by a series of contracts, which have been incorporated into the pleadings of record in this matter.  Where, as here, a valid

contract is the measure of the parties' rights and obligations, a claim for unjust enrichment should be dismissed by the Court.

## STATEMENT OF FACTS

On September 12, 2003, the District and Ed Beck & Associates, Inc. ("EBA")[1] executed a Master Lease Purchase Agreement[2] (the "Master Agreement") establishing terms by which EBA would provide funding to the District so that it could obtain software and support to aid in student development. Ex. A, at ¶ 2,3. The purchase of software and support was financed over several years, renewing automatically every fiscal year unless the District gave 90 days notice of termination prior to the end of the District's current fiscal year. Ex. A, at ¶ 1. Additional terms concerning termination are set forth in paragraphs 2 and 6 of the Master Agreement. Ex. A, at ¶ 2, 6.

The termination provisions of the Master Agreement state that:

> In the event no funds or insufficient funds are appropriated and budgeted or are otherwise unavailable by any means whatsoever in any fiscal period for Lease Payments due under this Lease, Lessee will immediately notify the Lessor or its assignee of such occurrence and this Lease shall terminate on the last day of the fiscal period for which appropriations were received without penalty or expense to Lessee of any kind whatsoever, except as to the portions of Lease Payments herein agreed upon for which funds shall have been appropriated and budgeted or are otherwise available.

Ex. A, at ¶ 6. The foregoing provision reveals that the District (and EBA) was fully aware on September 12, 2003 that future funding for the transaction was not guaranteed. Ex. A (signature block).

---

[1] EBA is alleged to have assigned all right, title and interest in the Master Agreement to Salem Capital Group, who in turn assigned all right, title and interest in the Master Agreement to Plaintiffs in the Second Amended Complaint. *See* D.I. 24, at ¶ 27.

[2] The Master Agreement was attached as Exhibit 1 to the Complaint (D.I. 1), Amended Complaint (D.I. 6), and Third-Party Complaint (D.I. 22), and as Exhibit A-1 to the Second Amended Complaint (D.I. 24). The Master Agreement is attached hereto as Exhibit A.

As indicated in the Master Agreement, the District chose SLC to be the provider of the desired software and support services. Ex. A, at ¶ 4. To that end, the District and SLC entered into three contracts (Order Forms with Terms and Conditions), which outlined the duties and obligations of each party and the timing thereof. *See* Contracts, Exs. B, C, and D hereto. The contracts were executed in 2003, 2004, and 2005, respectively. *See Id.*. When it signed the first contract in September, 2003, the District was fully aware of the funding contingency reflected in the termination provision of the Master Agreement. *See supra*, at p. 2.

The Order Forms describe the products and services to be provided to the District by SLC and state that payment must be made or a purchase order provided by the District or a third party within 15 or 30 days of receipt of the invoice. Ex. B, at 2; Ex. C, at 6; Ex. D, at 5. The first Order Form was dated September 16, 2003 and was for goods and services totaling $414,250. Ex. B, at 2. The second was dated June 28, 2004 and was for goods and services totaling $814,371. Ex. C, at 6. The third Order Form was dated June 15, 2005 and was for goods and services totaling $1,011,781. Ex. D, at 4. Each of the Order Forms was signed by representatives of the District and SLC. Exs. B-D. The latter two contracts indicate that the District received various discounts and promotional deals through its purchase. Ex. C, at 6; Ex. D, at 5. Finally, each Order Form states that the parties agree that they will be bound by the attached Terms and Conditions. *See* Exs. B-D.

The Terms and Conditions state that they, together with the accompanying Order Form, form a legal agreement between SLC and the District. *See* Exs. B-D, Terms and Conditions, at Intro. The Terms and Conditions set forth various provisions including, but not limited to, provisions governing breach and termination of the agreements. *See* Exs. B-C, Terms and Conditions, at ¶ 10.c; Ex. D, Terms and Conditions, at ¶ 11.c. Either party is given the right to

terminate the Agreement in the event that the other party materially breaches the Agreement and fails to correct such breach within a 30-day period. *See* Exs. B-C, Terms and Conditions, at ¶ 10.c; Ex. D, Terms and Conditions, at ¶ 11.c. Notably, neither the Terms and Conditions nor the Order Forms entitle the District to a refund of monies paid in the event the District terminates the program based upon the funding contingency contemplated in the termination provisions of the Master Agreement. *See supra*, at p. 2.

The aforementioned contracts, while conspicuously absent from the District's third-party pleading, are properly before this Court as part of its Motion to Dismiss determination because they are integral to and/or explicitly relied upon in the Master Agreement, which is attached as an exhibit to multiple pleadings, including the District's third-party complaint. *See* Ex. A hereto, at Ex. A (Equipment Schedule); *see also, infra*, at p. 5 (Argument, Part I (B)). More specifically, the Equipment Schedule (Exhibit A to the Master Agreement) references the Order Forms as OF-1, OF-2 and OF-3, respectively, and reads as follows:

> This Schedule incorporates a re-leasing of the products (as listed on Exhibit OF-1 and Exhibit OF-2) and a re-financing of the remaining rental payments due under the Schedule No 002 dated June 24, 2004 between Lessor and Lessee and also includes additional software products (as listed on Exhibit OF-3) from Scientific Leaning Corporation.

Ex. A hereto, at Ex. A.

## ARGUMENT

### I.     LEGAL STANDARDS

#### A.     MOTION TO DISMISS STANDARD

This Court may dismiss the Complaint pursuant to Rule 12(b)(6) if, after accepting as true the well-pleaded allegations in the complaint, and viewing those allegations in the light most favorable to plaintiff, the Court determines plaintiff is not entitled to relief. *Bartholomew v.*

*Fischl,* 782 F.2d 1148, 1152 (3d Cir. 1986). The Court need not accept unwarranted inferences and unsupported conclusions set forth in the Complaint. *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). In other words, "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 167 L. Ed. 2d 929, 127 S.Ct. 1955, 1965  (2007).

**B.    THE COURT MAY CONSIDER MATTERS OUTSIDE THE PLEADINGS WITHOUT CONVERTING A MOTION TO DISMISS TO  A MOTION FOR SUMMARY JUDGMENT**

"A court may consider 'document[s] integral to or explicitly relied upon in the complaint' without converting a motion to dismiss to a motion for summary judgment." *Houlihan v. Sussex Technical School District*, 461 F. Supp. 2d 252, 257 (D. Del. 2006) (citing *In re Rockefeller Center Properties, Inc. Securities Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). More specifically, conversion need not occur when a court considers the following:  "(1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record; and (4 ) matters integral to or upon which plaintiff's claim is based." *In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 760 (D.N.J. 2002) (citations omitted).  "[T]he rationale for these exceptions is that 'the primary problem raised by looking to documents outside the complaint – lack of notice – is dissipated.'"  *In re Rockefeller Center Properties, Inc. Securities Litig.*, 184 F.3d at 287 (citation omitted).

Here, the contracts are integral to and/or explicitly relied upon in the District's third-party pleading, and they are incorporated by reference in the Master Agreement. *See supra*, at p. 4. As a result, the instant Motion to Dismiss should not be converted to a motion for summary judgment.

## II. THE DISTRICT'S THIRD-PARTY COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The District's Third-Party Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6). As stated previously, the District asserts only one count in its Third-Party Complaint: a claim for unjust enrichment. *See* D.I. 22, at ¶¶ 8, 9. Unjust enrichment is a theory of recovery designed to grant relief in the absence of a formal contract. *Resource Ventures, Inc. v. Resources Management Int'l, Inc.*, 42 F. Supp. 2d 423, 439 (D. Del. 1999); *Bakerman v. Sidney Frank Importing Co., Inc.*, C.A. No. 1844-N, 2006 WL 3927242, *18 (Del. Ch. Oct. 10, 2006); *Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, C.A. No. 94C-03-189-WTQ, 1997 WL 529587, *17 (Del. Super. Jan. 29, 1997). Given its genesis as a theory, it comes as no surprise that a claim for unjust enrichment must meet the following elements: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy at law." *See Morschbach v. Household Int'l Inc.*, C.A. No. 01-262 GMS, 2002 WL 187514, *5 (D. Del. Feb. 6, 2002) (citing *Jackson Nat. Life. Ins. Co. v. Kennedy*, 741 A.2d 377, 393-94 (Del. Ch. 1999)). In light of the foregoing elements, it similarly is no surprise that where a valid contract exists between the parties, a claim for unjust enrichment will be dismissed by the Court. *See Resource Ventures*, 42 F.Supp.2d at 440 (granting motion to dismiss pursuant to Rule 12(b)(6) because a contract existed between the parties); *In re Quintus Corporation*, 353 B.R. 77 (Bankr. D. Del. 2006) (granting motion for summary judgment where binding contract existed between the parties); *Bakerman*, 2006 WL 3927242 at *19 (granting motion to dismiss pursuant to Del. Ch. Ct. Rule 12(b)(6) where enforceable agreement existed); *Kirkwood Kin*, 1997 WL 529589 at *17 (granting summary judgment where a formal contract existed between the parties which governed their relationship).

In the present case, valid contracts - Order Forms and Terms and Conditions - exist between the District and SLC. The contracts require that the District pay up front and that payments be made or purchase orders be provided within 15 or 30 days of receipt of the invoices. The Order Forms reflect the discounts and promotions that the District received under the contracts, and the Terms and Conditions of each contract address rights and obligations of the parties, e.g., breach, termination, liability and merger. There is no right to a refund enumerated in the contracts. No challenge to the validity of the parties' contracts, which are incorporated by reference into the Third-Party Complaint and other pleadings of record, has been made, and there has been no allegation that SLC failed to properly perform or that SLC is improperly withholding performance. Finally, the potential for the alleged funding problem that is driving this action was known to the District at the time of its contracting with SLC.

Though not explicitly stated in the Third-Party Complaint, the District, in a classic case of buyer's remorse, seeks relief from the terms of a prior bargain that it now regrets. Courts will not intervene to save parties from bad bargains, absent unusual circumstances not present here. *See Finkel's, Inc. v. Shields Development Co.*, C.A. No. 5981, 1980 WL 273552, at *4 (Del. Ch. June 2, 1980) ("the fact that a party to a contract has made a bad bargain does not entitle him to reformation or rescission."); *Liberto v. Bensinger*, C.A. No. 1411-K, 1999 WL 1313662, *5 (Del. Ch. Dec. 28, 1999) (same). In an analogous situation involving debt collectors, one court offered a helpful analogy when it reasoned that a season ticket holder would not be entitled to a partial refund if halfway through the season it turns out his team is no good. Instead, the ticket holder is stuck with the bargain they made. *See Seko Air Freight, Inc. v. Transworld Systems, Inc.*, 22 F.3d 773 (7th Cir. 1994). The same reasoning should apply here.

The contracts are the measure of the contracting parties' rights. Under the contracts, SLC is fully justified in retaining monies paid by the District, and an essential element of the District's unjust enrichment claim, the absence of justification, is left unmet.

## CONCLUSION

For the foregoing reasons, SLC respectfully requests the Court to dismiss the District's Third-Party Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

POTTER ANDERSON & CORROON LLP


By:  /s/ David E. Moore
    Jennifer Gimler Brady (#2874)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    jbrady@potteranderson.com
    dmoore@potteranderson.com

Dated:  December 13, 2007          *Attorneys for Third-Party Defendant*
835941 /32439                      *Scientific Learning Corporation*

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 13, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on December 13, 2007, I have Electronically Mailed the documents to the following person(s):

David H. Williams
James H. McMackin, III
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
dwilliams@morrisjames.com
jmcmackin@morrisjames.com

Patricia Smink Rogowski
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
progowski@cblh.com

I further certify that on December 13, 2007, I have Mailed, via U.S. First Class Mail, the documents to the following person(s):

Thresa Giles
11685 Blackstone River Drive
Jacksonville, FL 32256
904-651-6494
PRO SE

By:   /s/ David E. Moore
      Jennifer Gimler Brady
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      Tel: (302) 984-6000
      jbrady@potteranderson.com
      dmoore@potteranderson.com

831353 / 32439

# EXHIBIT A

MASTER LEASE PURCHASE AGREEMENT

This MASTER LEASE PURCHASE AGREEMENT (the "LEASE") is by and between Ed Beck & Associates, Inc. a California corporation ("LESSOR") and Christina School District a branch, agency, or political subdivision of the State of Delaware ("LESSEE").

WITNESSETH:

Lessor hereby demises, leases and lets to Lessee and Lessee hereby rents, leases and hires from Lessor, the Software described in any Exhibit A now or hereafter attached hereto (the "Software") in accordance with the following terms and conditions of this Master Lease Purchase Agreement (the "Lease"). The terms "Exhibit A" (Equipment, Payment and Delivery and Acceptance Schedule) and "Exhibit B" (Essential Use/Source of Funds Letter) as used herein shall mean all such consecutively lettered Exhibits that are or may be in the future attached as exhibits to and be governed by the terms of this Lease.

1. Term. This Lease shall become effective upon the execution by Lessee and Lessor. The term of this Lease ("Lease Term") shall commence on the date the Software is accepted for delivery by Lessee pursuant to Section 3 hereunder and the Lease Term shall continue until all payments are made in accordance with all Exhibit A's attached to this Lease, subject to the provisions of Section 6 hereunder. This Lease will be automatically renewed at the end of each fiscal year unless the Lessee gives written notice to Lessor not less than ninety (90) days prior to the end of the Lessee's fiscal year of Lessee's intention to terminate this Lease pursuant to Section 6 hereunder.

2. Lease Payments. Lessee agrees to pay to Lessor or its assignee the Lease Payments, including the interest portion, equal to the amounts specified in Exhibit A (the "Lease Payments"). The Lease Payments will be payable without notice or demand at the office of the Lessor (or such other place as Lessor or its assignee may from time to time designate in writing.), and will commence on the Commencement Date as set forth in Exhibit A and thereafter in accordance with Exhibit A. Lessee shall pay to Lessor, on demand, interest at the rate of 10% (ten percent) per annum or the highest lawful rate, whichever is less, from the due date on the amount of any rental payment (the "Payment Date") or other payment not made when due under this Lease, from the date due until the date on which such payment is received by Lessor. Except as specifically provided in Section 6 hereof, Lessee's obligation to make Lease Payments will be absolute and unconditional in all events and will not be subject to any setoff, defense, counterclaim, or recoupment for any reason whatsoever including, without limitation, any failure of the Software to be delivered or installed, any defects, malfunctions, breakdowns or infirmities in the Software or any accident, condemnation or unforeseen circumstances.

Lessee reasonably believes that funds can be obtained sufficient to make all Lease Payments during the Lease Term and hereby covenants that it will do all things lawfully within its power to obtain, maintain and properly request and pursue funds from which the Lease Payments may be made, including making provisions for such payments to the extent necessary in each budget submitted for the purpose of obtaining funding, using its bona fide best efforts to have such portion of the budget approved and exhausting all available administrative reviews and appeals in the event such portion of the budget is not approved. It is Lessee's intent to make Lease Payments for the full Lease Term if funds are legally available therefor and in that regard Lessee represents that the use of the Software is essential to its proper, efficient and economic operation. Lessor and Lessee understand and intend that the obligation of Lessee to pay Lease Payments hereunder shall constitute a current expense of Lessee and shall not in any way be construed to be a debt of Lessee in contravention of any applicable constitutional or statutory limitation or requirement concerning the creation of indebtedness by Lessee, nor shall anything contained herein constitute a pledge of the general tax revenues, funds or monies of Lessee.

3. Delivery and Acceptance. Lessor will cause the Software to be delivered to Lessee at the location specified in Exhibit A ("Software Location"). Lessee will pay all transportation and other costs, if any, incurred in connection with the delivery of the Software. Lessee will accept the Software as soon as it has been delivered. Lessee will evidence its acceptance for delivery of the Software by executing and delivering to Lessor a Delivery and Acceptance Certificate in the form provided by Lessor and attached hereto as Exhibit A.

Lessee acknowledges that if all or part of the funds provided by Lessor under this Lease are not needed immediately by the Lessee for payment of Software invoices, Lessor may escrow funds in U. S. government agency, insured investments or commercial paper rated A1 by Standard & Poor's or P1 by Moody's Investor's Services for a term not to exceed 6 months. Lessee further acknowledges and agrees that all earnings on such funds constitute interest due Lessor pursuant to this Lease.

4. <u>Ownership, Liens.</u> Lessor, its Assigns and Lessee acknowledge and agree that each of the Software is subject to the exclusive proprietary rights of Scientific Learning Corporation ("SciLearn") or the Licensor thereof and that neither Lessee nor any assignee shall have ownership rights in the Software. Neither Lessee nor any assignee shall have right, title or interest in (i) SciLearn Software except as set forth in this Agreement and in the Order Form for shrink-wrap software products (as amended, renewed or extended from time to time including any addenda or exhibits thereto (the "Software License") and (ii) non-SciLearn Products except as provided in this Agreement or the license agreements from the licensors thereof ("Vendor Agreements") (the SciLearn License and Vendor Agreements are collectively the "License Agreements). Lessee shall at its expense keep the Software and each Lease clear of all liens, charges, claims and other encumbrances. In the event of default (as defined in Section15 herein) or in the event of non-appropriation of funds (as defined in Section 6 herein) any assignee will return to SciLearn any Software, which it may take into its possession. At the expiration of this lease, provided no event of default or non-appropriation has occurred and is continuing, and provided the Lease Agreement has not otherwise not been terminated, Lessee, having complied with all the terms of the Lease Agreement, will have the rights to a fully paid-up, perpetual Software License.

5. <u>Disclaimer of Warranties.</u>  Lessee acknowledges and agrees that the Software is of a size, design and capacity selected by Lessee, that Assignee (as defined in Section 14 herein) is neither a manufacturer nor a vendor of such Software and that ASSIGNEE HAS NOT MADE, AND DOES NOT HEREBY MAKE, ANY REPRESENTATION, WARRANTY, OR COVENANT, EXPRESS OR IMPLIED, WITH RESPECT TO THE MERCHANTABILITY, CONDITION, QUALITY, DURABILITY, DESIGN, OPERATION, FITNESS FOR USE, OR SUITABILITY OF THE SOFTWARE IN ANY RESPECT WHATSOEVER OR IN CONNECTION WITH OR FOR THE PURPOSES AND USES OF LESSEE, OR ANY OTHER REPRESENTATION, WARRANTY, OR COVENANT OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT THERETO, AND ASSIGNEE SHALL NOT BE OBLIGATED OR LIABLE FOR ACTUAL, INCIDENTAL , CONSEQUENTIAL, OR OTHER DAMAGES OF OR TO LESSEE OR ANY OTHER PERSON OR ENTITY ARISING OUT OF OR IN CONNECTION WITH THE USE OR PERFORMANCE OF THE SOFTWARE AND THE MAINTENANCE THEREOF.

Lessor hereby assigns to Lessee during the Lease Term, so long as no Event of Default has occurred hereunder and is continuing, all manufacturer's warranties, if any, expressed or implied with respect to the Software, and Lessor authorizes Lessee to obtain the customary services furnished in connection with such warranties under the Software License. Lessee's sole remedy for the breach of any such manufacturer's warranty shall be against the manufacturers of the Software, and not against assignee, nor shall such matter have any effect whatsoever on the rights and obligations of Lessor with respect to this Lease, including the right to receive full and timely payments hereunder.

6. <u>Non-Appropriation of Funds; Non-Substitution.</u>  Notwithstanding anything contained in this Lease to the contrary, in the event no funds or insufficient funds are appropriated and budgeted or are otherwise unavailable by any means whatsoever in any fiscal period for Lease Payments due under this Lease, Lessee will immediately notify the Lessor or its assignee of such occurrence and this Lease shall terminate on the last day of the fiscal period for which appropriations were received without penalty or expense to Lessee of any kind whatsoever, except as to the portions of Lease Payments herein agreed upon for which funds shall have been appropriated and budgeted or are otherwise available. In the event of such termination, Lessee agrees to peaceably surrender possession of the Software to SciLearn the date of such termination, packed for shipment in accordance with manufacturer's specifications and freight prepaid and insured to any location in the continental United States designated by SciLearn. Lessor will have all legal and equitable rights and remedies to take possession of the Software. Notwithstanding the foregoing, and to the extent permitted by law, Lessee agrees (i) that it will not cancel this Lease under the provisions of this Section if any funds are appropriated to it, or by it, for the intended use of the Software for the period in which such termination occurs of the next succeeding fiscal period thereafter, and (ii) that it will not during the Lease Term give priority in the application of funds for the acquisition, retention or operation of any other functionally similar Software. To the extent permitted by law, this Section will not be construed so as to permit Lessee to terminate this Lease in order to acquire or lease any other Software or to allocate funds directly or indirectly to perform essentially the same application for which the Software is intended.

7. <u>Certification and Authorization</u>. Lessee represents, covenants and warrants that it is a state, or a political subdivision thereof, or that Lessee's obligation under this Lease constitutes an obligation issued on behalf of a state of political subdivision thereof, such that any interest derived under this Lease will qualify for exemption from Federal income taxes under Section 103 of the Internal Revenue Code. Lessee further warrants that this Lease represents a valid deferred payment obligation for the amount herein set forth and that Lessee, having the legal capacity to enter into the same, is not in contravention of any Town/City, District, County, or State statute, rule, regulation, or other governmental provision. Lessee hereby determines and declares that Lessee (and any entity acting on behalf of or subordinate to Lessee) does not reasonably anticipate to issue in the calendar year in which the Lease was executed, tax-exempt obligations in aggregate principal amount greater than $10,000,000 (exclusive of private activity bonds as defined in the Code). Lessee hereby specifically designates the Lease as a "qualified tax-exempt obligation" within the meaning of Section 265(b) of the Code, and covenants that it will not in any event designate in the calendar year in which the Lease was executed more than $10,000,000 of its obligations as such "qualified tax-exempt obligations". Lessee agrees that (i) it will do or cause to be done all things necessary to preserve and keep the Lease in full force and effect; (ii) it has complied with all bidding requirements where necessary and by due notification presented this Lease for approval and adoption as a valid obligation on its part; and (iii) it has sufficient appropriations or other funds available to pay all amounts due hereunder for the current fiscal period; (iv) during the term of this Lease, the Software will be used by Lessee only for the purpose of performing one or more governmental or proprietary functions of Lessee consistent with the permissible scope of Lessee's authority and will not be used in a trade or business of any person or entity other than the Lessee; (v) Lessee will take no action that will cause the interest portion of any Lease Payment to become includable in gross income for purposes of federal income taxation under the Code.

8. <u>Filings</u>. Lessee agrees to timely file the appropriate IRS form 8038-G.

9. <u>Alterations</u>. Alterations, additions or improvements to the Software may be made consistent with the terms of the Software License.

10. <u>Location; Inspection</u>. The Software may be used and maintained in any location(s) as permitted by the software license. Lessor will be entitled to enter upon the Software Location or elsewhere during reasonable business hours to inspect the Software or observe its use and operation.

11. <u>Liens and Taxes</u>. Lessee shall pay, when due, all charges and taxes (local, state and federal) which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession or use of the Software, excluding however, all taxes on or measured by Lessor's income. If Lessee fails to pay said charges and taxes when due, Lessor shall have the right, but shall not be obligated, to pay such charges or taxes. Lessee shall reimburse Lessor therefor.

12. <u>Risk of Loss; Damage; Destruction</u>. Lessee assumes all risk of loss of or damage to the Software from any cause whatsoever, and no such loss of or damage to the Software nor unfitness or obsolescence thereof shall relieve Lessee of the obligation to make Lease Payments or to perform any other obligation under this lease. In the event of damage to any item of Software, Lessee will maintain adequate backup of all software.

13. <u>Indemnification</u>. To the extent permitted by law, Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, proceedings, expenses, damages or liabilities, including attorney's fees and court costs, arising in connection with the Software, including, but not limited to, its selection, purchase, delivery, possession, use, operation, rejection, or return and the recovery of claims under insurance policies thereon. The indemnification arising under this Section shall continue in full force and effect notwithstanding the full payment of all obligations under this Lease or the termination of the Lease Term for any reason.

14. <u>Assignment</u>. Without Lessor's prior written consent, Lessee will not either (i) assign, transfer, pledge, hypothecate, grant any security interest in or otherwise dispose of this Lease of the Software or any interest in this Lease of the Software or (ii) sublet or lend the Software or permit it to be used by anyone other than Lessee, or Lessee's employees for the governmental purposes of Lessee. Lessor may assign its rights, title and interest in and to this Lease and any documents executed with respect to this Lease and /or grant or assign an interest in this Lease. Any such assignees shall have all of the rights of Lessor under this Lease. Subject to the foregoing, this Lease inures to the benefit of and is binding upon the heirs, executors, administrators, successors and assigns of the parties hereto, Lessee covenants and agrees not to assert against the assignees any claims or defenses by way of abatement setoff, counterclaim, recoupment or the like which Lessee may have against Lessor. Upon assignment of Lessor's interests herein, Lessor will cause written notice of such assignment to be sent to Lessee which will be sufficient if it discloses the name of the assignee and address to which further payments hereunder should be made.

In compliance with Section 149 (a) of the Internal Revenue Code, Lessee hereby designates the Lessor to be its agent for the purposes of maintaining a book entry system identifying the ownership or interests in and to this Lease and the Lessor hereby accepts its duties as agent hereunder.

Lessee acknowledges that Lessor may enter into a Trust Agreement with a national banking association or a state banking association to be selected by Lessor for the purpose of establishing funds and accounts for the payment of the acquisition price of the Software to the vendor, for prepayment of the Lease prior to maturity, for damage or condemnation of the Software and for receipt of rental payments and other amounts due from Lessee pursuant to the Lease and for distribution of such amounts to holders of Certificates of Participation, as provided for in the Trust Agreement.

15. <u>Event of Default</u>. The term "Event of Default" as used herein, means the occurrence of any one or more of the following events: (i) Lessee fails to make any Lease Payment (or any other payment) as it becomes due in accordance with the terms of the Lease, and any such failure continues for ten (10) days after the due date thereof; (ii) Lessee fails to perform or observe any other covenant, condition, or agreement to be performed or observed by it hereunder and such failure is not cured within twenty (20) days after written notice thereof by Lessor, (iii) the discovery by Lessor that any statement, representation, or warranty made by Lessee in this Lease or in writing ever delivered by Lessee pursuant hereto or in connection herewith is false, misleading or erroneous in any material respect; (iv) proceedings under any bankruptcy, insolvency reorganization or similar legislation shall be instituted against or by Lessee, or a receiver or similar officer shall be appointed for Lessee or any of its property, and such proceedings or appointments shall not be vacated, or fully stayed, within twenty (20) days after the institution or occurrence thereof; or (v) an attachment, levy or execution is threatened or levied upon or against the Software.

16. <u>Remedies</u>. Upon the occurrence of an Event of Default, as long as such Event of Default is continuing, Lessor may, at its option, exercise any one or more of the following remedies: (i) by written notice to Lessee, declare an amount equal to all amounts then due under the Lease, and (II) by written notice to the Lessee, request Lessee to (and Lessee agrees that it will), at Lessee's expense, promptly return the Software to SciLearn in the manner set forth in Section 5 hereof, or Lessor, at its option, may enter upon the premises where the Software is located and take immediate possession of and remove the same; (iii) terminate the license granted to Lessee and/or to withhold support, consulting and maintenance or other services provided under or in connection with the software license; and (iv) exercise any other right, remedy or privilege which may be available to it under applicable law of the state of the Software Location or any other applicable law or proceed by appropriate court action to enforce the terms of the Lease or to recover damages for the breach of this Lease or to rescind this Lease as to any or all of the Software. In addition Lessee will remain liable for all covenants and indemnities under this Lease and for all legal fees and other costs and expenses, including court costs, incurred by Lessor with respect to the enforcement of any of the remedies listed above or any other remedy available to Lessor.

17. <u>Purchase Option</u>. Lessee shall have the option to purchase a perpetual license in this Lease and the Software on any applicable Payment Date providing: (i) Lessee is not in default under the Lease; (ii) Lessee gives notice to Lessor of its intention to exercise this option at least sixty (60) days prior to the Payment Date on which the option is to be exercised; (iii) Lessee has complied with all applicable laws concerning acquisition of license; (iv) there is a specific purchase option shown in Exhibit A on that Payment Date and (v) on the applicable payment date, the Lessee shall deposit with the Lessor an amount equal to all Lease Payments and any other amounts then due or past due (including but not limited to the Lease Payment due on the applicable Payment Date) together with the applicable Purchase Option Price set forth in Exhibit A. The closing shall be on the Payment Date or the first business day preceding the Payment Date at the office of the Lessor or such other place as the Lessor may direct.

18. <u>Section Headings</u>. All section headings contained herein are for the convenience of reference only and are not intended to define or limit the scope of any provision of this Lease.

19. <u>Governing Law</u>. This Lease shall be construed in accordance with, and governed by the laws of, the state of the Software location.

20. <u>Delivery of Related Documents</u>. Lessee will execute or provide, as requested by Lessor, such other documents and information as are reasonably necessary with respect to the transaction contemplated by this Lease.

21. <u>Entire Agreement: Waiver</u>. This Lease, together with the Delivery and Acceptance Certificate and other attachments hereto, and other documents or instruments executed by Lessee and Lessor in connection herewith, shall constitute the entire agreement between the parties with respect to the lease of the Software, and this Lease shall not be modified, amended, altered, or changed except with the written consent of Lessee and Lessor. Any provision of this Lease found to be prohibited by law shall be ineffective to the extent of such prohibition without

invalidating the remainder of the Lease. The waiver by Lessor of any breach by Lessee of any term, covenant or condition hereof shall not operate as a waiver of any subsequent breach thereof.

22. Use of Software. The Lessee will use the Software in a manner contemplated by the Software License, this Lease and the Essential Use/Source of Funds Letter and shall comply with all applicable laws, ordinances, claims, damages, fees and charges arising out of its possession, use or maintenance. The Lessee, at its expense, shall be responsible for and shall pay all charges for the maintenance of the Software.

23. Taxes and Other Government Charges. In the event the Software is found to be subject to taxation in any form, the Lessee will pay as the same respectively become due, all taxes and governmental charges of any kind whatsoever together with any interest and penalties that may at any time be lawfully assessed or levied against or with respect to the Software including but not limited to the ownership, leasing, rental, sale, purchase, or possession thereof (excluding however, all taxes on or measured by the Lessor's or its assigns' income) and any Software or other property acquired by the Lessee in substitution for, as a renewal or replacement of, or as a modification, improvement, or addition to the Software, as well as all other charges incurred in the operation, maintenance, use and upkeep of the Software; provided that with respect to any governmental charges that may lawfully be paid in installments over a period of years, the Lessee shall be obligated to pay only such installments as are required to be paid during the Lease Term. Upon the expiration or earlier termination of this Lease, the Lessee shall pay to the Lessor or its assigns any ad valorem, personal property or excise taxes assessed but not yet due and payable.

24. Notices. All notices to be given under this Lease shall be make in writing and mailed by certified mail, return receipt requested, to the other party at its address set forth herein or at such address as the party may provide in writing from time to time. Any such notice shall be deemed to have been received five (5) days subsequent to mailing.

IN WITNESS WHEREOF, the parties have executed this Lease as of the 12th day of September 2003.

LESSEE: Christina School District

By: _____

Name (print): _JOSEPH WISE_____

Title: _SUPERINTENDENT_____

LESSOR: Ed Beck & Associates, Inc.

By: _____

Name (print): _GERALD S. MISUREK_____

Title: _EXEC VP_____

ADDRESS FOR NOTICES UNDER THIS LEASE:

83 East Main Street

Newark, DE 19711

ADDRESS FOR NOTICE UNDER THIS LEASE:

31091 Via Consuelo

Coto De Caza, CA 92679

Lessee Contact: _DAVID SVNOSTROM_____

Telephone Number: _302 454 1526.___

Lessor Contact: Gerald Misurek

Telephone Number: 770- 205-6055

**EXHIBIT A**

**EQUIPMENT SCHEDULE**

Master Lease Purchase Agreement dated: September 12, 2003.          Schedule Number: 003

This Equipment Schedule dated as of June 23, 2005 is being executed by Ed Beck & Associates, Inc. ("Lessor"), and Christina School District ("Lessee") as a supplement to, and is hereby attached to and made a part of that certain Master Lease Purchase Agreement dated as of September 12, 2003, between Lessor and Lessee.

This Schedule incorporates a re-leasing of the products (as listed on Exhibit OF-1 and Exhibit OF-2) and a re-financing of the remaining rental payments due under the Schedule No 002 dated June 24, 2004 between Lessor and Lessee and also includes additional software products (as listed on Exhibit OF-3) from Scientific Learning Corporation. Upon acceptance of this Schedule by Lessor, Schedule No 002 will be retired as having been paid in full.

Lessor hereby agrees to lease to Lessee under and pursuant to the Lease, the following items of software:

<u>Description</u>: Software products as described under Scientific Learning Corporation Order Forms as Exhibits OF-1, OF-2 and OF-3 attached hereto.

<u>Equipment Location:</u>

~~83 East Main Street~~ *400 N Lonbard St*
~~Newark, DE 19711~~ 300 *Wilmington, De 19801*
and locations authorized under the Order Forms

<u>Vendor:</u>

Scientific Learning Corporation
Frank H. Ogawa Plaza, Suite 500
Oakland, CA 94612-2040

---

**PAYMENT SCHEDULE**

LESSEE:          Christina School District

| PAYMENT | DATE | PAYMENT | INTEREST (included in payment) | EARLY TERMINATION PURCHASE OPTION |
|---|---|---|---|---|
| 1. | July 15, 2005 | $537,691.00 | $5,913.03 | None |
| 2 | July 15, 2006 | $537,691.00 | $80,932.77 | $1,016,899.59 |
| 3. | July 15, 2007 | $537,691.00 | $55,408.13 | $517,941.79 |
| 4. | July 15, 2008 | $537,691.00 | $28,457.11 | $ 0 |

---

LESSOR:

ED BECK & ASSOCIATES, INC.

By: _____

Name (print): *GERALD S MISUREC*

Title: *EXEC VP*

LESSEE:

CHRISTINA SCHOOL DISTRICT

By: _____

Name (print): *Thrun Giles*

Title: *Chief Financial Officer*

**EXHIBIT B**

**ESSENTIAL USE/SOURCE OF FUNDS LETTER**

Gentlemen:

This confirms and affirms that the Software described in the Schedule No 003 dated June 23, 2005 to the Master Lease Purchase Agreement dated September 12, 2003 (the "Lease") is essential to the function of the undersigned or to the service we provide to our citizens.

Further, we have an immediate need for, and expect to make immediate use of, substantially all such Software which is not temporarily or expected to diminish in the foreseeable future. Such Software will be used by us only for the purpose of performing one or more of our governmental or proprietary functions consistent with the permissible scope of our authority.  Specifically, such Software is intended to be used by us for the following purposes or functions:

Lessee is acquiring the referenced software from Scientific Learning for the primary purpose of: enhancing the reading, mathematics, and related skills of Lessee's students.  Lessee is an educational institution whose charter is to educate students in academic and life skills, and Lessee represents that this software acquisition meets the essential use standards Lessee normally applies to acquisitions of products and services.

The estimated useful life of such Software based upon manufacturer's representations and our projected needs is
_5 - 7_    years.

Our source of funds for payments of the rent due under the Lease for the current fiscal year is_____
_____ _Federal Funds - N.C.L.B_ _____

We expect and anticipate adequate funds to be available for all future Lease Payments due after the current fiscal year for the following reasons: _Continual of federal funds_

Very truly yours,

CHRISTINA SCHOOL DISTRICT

By: _____

Name (print): _Theresa Giles_

Title: _C.F.O._                          Date: June 23, 2005

# EXHIBIT B

EXHIBIT OF-1    T-364  P 03/06  F-355

Scientific Learning.

# Order Form

| Customer Name (School Dist./Org.) | Christina School District, DE | Customer Contact: | Dr. Alexis Gordon, Title I Director Phone: 302-454-2524 Fax: 302-454-5360 |
|---|---|---|---|
| Ship to: Name & Address | Same as Bill to: See contact at each site setting € where | Bill to: Address | Dr. Alexis Gordon Christina School District 83 E. Main St. Newark, DE 19711 |

| Org ID | Contact Name & Phone Number | Name & Site Address |
|---|---|---|
| 30863 | Peter Vasos, Principal 302-429-4102 | Bancroft Elementary School 700 N Lombard St Wilmington, DE 19801-4217 |
| 30868 | Robert Klatzkin, Principal 302-429-4139 | Drew-Pyle Elementary School 600 N Lombard St Wilmington, DE 19801-4429 |
| 30881 | Lavina Smith, Principal 302-429-4186 | Elbert-Palmer Elem School 1210 Lobdell St Wilmington, DE 19801-5404 |
| 30875 | Sheryl Arnold, Principal 302-429-4175 | Frederick D Stubbs Elem School 1100 Pine St Wilmington, DE 19801-4012 |
| 30873 | George Steinhoff, Principal 302-429-4136 | Casimer Pulaski Elem School 1300 Cedar St Wilmington, DE 19805-4306 |
| 30864 | Deborah Doordan, Principal 302-429-4118 | Thomas F. Bayard Elem School 200 S Dupont St Wilmington, DE 19805-3972 |



T-384　P 04/06　F-355

Software products licensed for use only at the above site(s):

| Software Product | License Type | # of CDs provided | License Start Date | License Term | Support Term Start Date | Support Term End Date |
|---|---|---|---|---|---|---|
| Fast ForWord Basics | Disc | 60 (180 CDs -30 per site) | immediate | Perpetual | 9/15/03 | 9/15/07 |
| Fast Forword BookShelf Vol.1 | Disc | 6 (30 CDs - 6 per site) | immediate | Perpetual | 9/15/03 | 9/15/07 |
| Fast Forword BookShelf Vol.2 | Disc | 6  30 CDs - 6 per site) | immediate | Perpetual | 9/15/03 | 9/15/07 |
| Reading Edge | Disc | 43 (192 CDs - 32 per site) | immediate | Perpetual | 9/15/03 | 9/15/07 |
| Fast ForWord Language GW Ed. | Site | 180  (30 per site) | 9/15/03 | Perpetual | 9/15/03 | 9/15/07 |
| Fast ForWord Language to Reading GW Ed. | Site | 180 (30 per site) | 9/15/03 | Perpetual | 9/15/03 | 9/15/07 |
| Fast ForWord Reading 3 GW Ed. | Site | 180 (30 per site) | 9/16/03 | Perpetual | 9/15/03 | 9/15/07 |
| Fast ForWord Reading 4 GW Ed. | Site | 180 (30 per site) | 9/15/03 | Perpetual | 9/15/03 | 9/15/07 |

| Online Products | License Type | Access Term Start Date | Access Term End Date | Support Term Start Date | Support Term End Date |
|---|---|---|---|---|---|
| Progress Tracker Online Data System | Site | 9/15/03 | 9/15/07 | 9/15/03 | 9/15/07 |

At the end of the applicable terms stated above, access to ongoing support, maintenance and the Progress Tracker Online Data System is available for an additional annual fee.

**Fast ForWord to Learning:　Training and Consulting Services　Per Site**
- 2-day (consecutive) on-site training seminar for up to 15 participants to be completed within the first 6 months of the site license term
- 3 (non-consecutive) days of on-site follow-up training/consulting/project management to be completed within the first 12 months of the site license term
- Fast ForWord to Learning Online Products:
  - Fast ForWord Getting Started (CrossTrain): self-paced training on how to administer the Fast ForWord products: perpetual site license for site specified above
  - BrainConnection.com professional development courses: 10 single-course registrations during the first 12 months of the site license term

Fee: $414,225.00　　Check one:　　X　Subject to sales tax (will be added to invoice to Institution)
　　　　　　　　　　　　　　　　　　Tax exempt (please provide sales tax exempt certificate issued by your state)

**Payment Provisions:** The district or a third party designated by the district will provide a purchase order or payment within 30 days of receipt of invoice.
**Other Provisions:** Promotional Offer. 30 Headsets and 30 Y-Connectors will be added to this order, at no additional charge, if an Order Form for this amount ($414,250) is signed and returned no later than September 30, 2003.

Customer agrees to purchase and Scientific Learning agrees to sell and provide the licenses and services specified above. Customer agrees to pay the fee specified above on the specified terms. This Order Form is subject to the Terms and Conditions that accompany the software, a copy of which has been provided to and reviewed by Customer. This Order Form and these Terms and Conditions constitute the complete and entire agreement between SLC and the Customer with respect to the licenses and services specified above.

Ordered by: Christian School District

By: _~signature~_

Name: _Dacid D. Fickerman_

Title: _Assistant Superintendent_

Date: _5/7/6/2003_

Corporate Taxpayer ID #94-3234451　　　2

Accepted by: Scientific Learning Corporation

By: _~signature~_

Name: _____

Title: _____

Date: _9/16/03_

**COPY**

## TERMS AND CONDITIONS

**These Terms and Conditions, together with the accompanying Order Form or other mutually agreeable written document specifying the licenses and/or services being purchased (the "Order Document") form a legal agreement (the "Agreement") between Scientific Learning Corporation ("SLC" or the "Licensor") and the individual or entity who is the Customer under the Order Document ("Customer").**

1.  **Scope of Agreement.** The terms of the Agreement govern:
    a.  Customer's license to the software product(s) specified in the Order Document (the "Products");
    b.  Customer's access to the Progress Tracker online data system with respect to the Products or other on-line products or services (together, the "OnLine Products"), if access to such OnLine Products is specified in the Order Document; and
    c.  Customer's purchase of support or other services, if such services are specified in the Order Document.

    For purposes of this Agreement, the term Software means both the Products and, if applicable, the software used in the OnLine Products, together with any related technical support or professional development software that Licensor may provide to Customer and that is not specified in the Order Document or other agreement.

2.  **License.** Licensor grants to Customer, and Customer accepts, a limited, non-exclusive, nontransferable license to use the Products (in object code only), the OnLine Products (only via access to the user interface over the World Wide Web), and the manuals and documentation (written or on-line) provided to Customer in connection with the Software (collectively, the "Licensed Material"), solely for educational and related administrative purposes and subject to the terms provided in this Agreement. The Licensed Material is protected by trade secret and/or copyright law and is proprietary to Licensor and/or its licensors. The Licensed Material is licensed, not sold.

3.  **Definitions of Particular License Categories.** The following terms, if used in the Order Document, have the meanings set forth below:
    a.  <u>For use at a specified site</u>: the Software may be used only at the physical site specified. The physical location may not be changed without Licensor's prior written consent.
    b.  <u>Site license</u>: Products subject to a site license may be used only at the physical site specified, by an unlimited number of students who are regularly enrolled students at that site. If the Progress Tracker online data system is licensed under a site license, it may be used only in connection with any students who are regularly enrolled students at the specified site. Online Products that are professional development, training or support products may be used only by persons who are providing services for the specified site.
    c.  <u>Workstation license</u>: the Software may be installed or used only on the specified number of workstations by students who are regularly enrolled students at the specified site(s). If the Software is installed in a network configuration in which the host computer does not permit the use of the Software by students, the host computer is not counted towards the workstation limit, but all computers used by students are counted. All of the Products licensed for a specified workstation limit must be installed on the same workstations; one product may not be installed on one workstation and a second product on a different workstation.
    d.  <u>Specified students</u> (for example, students receiving particular services or students in particular grades): the Software may be used only with students who are within the specified groups by students who are regularly enrolled students at the specified site(s).
    e.  <u>Disc license</u>: the maximum number of simultaneous users of the Software may not exceed the number of CDs containing the product that have been provided by Licensor under the license.
    f.  <u>Start date</u>: the date that the license for the Software begins.
    g.  <u>Term</u>: The Software may be used by students or others using the exercises (participants) only during the time period specified as the license term. Participants may not use the Software after the end of the specified time period.
    h.  <u>Per participant license</u>: The Customer may use the Software with a maximum aggregate number of participants equal to the number of per participant licenses purchased. Each time a Software product is used by a different person counts as one participant, even if a given individual uses more than one product.

    Order Documents may include additional restrictions, limitations or other terms relating to the Software being licensed.

4.  **Progress Tracker OnLine Data System and Other OnLine Products.** If the Order Document specifies access to the Progress Tracker OnLine Data System or other online products or services (collectively, "OnLine Products"), the following terms govern such access.
    a.  The license to and use of the Progress Tracker System requires payment of an initial license fee, which is due in connection with beginning access to the system, and a periodic access fee, which permits access over a specified period of time. The initial license fee does not permit access to the Progress Tracker system unless access rights are also in force.
    b.  A single course registration entitles one person to enroll in one specified online product.
    c.  The OnLine Products are maintained on SLC servers and provided to Customer via the World Wide Web. SLC is not responsible for any incompatibility between the OnLine Products and services provided by Customer's Internet service provider.
    d.  OnLine Products may be used only in connection with the Products and/or for professional development and training of Customer's teachers and other staff. Customer acknowledges that not all Products feature Progress Tracker system access.

1

e.  SLC may, from time to time, in its sole discretion, add new content to or modify or discontinue content contained in the OnLine Products.

f.  Access to the OnLine Products is provided only for the limited term specified in the Order Document. If Customer and Licensor agree to renew the term, the renewal will require an additional fee and will be on the terms specified in these Terms and Conditions, unless Licensor has provided Customer with new or additional terms governing such renewal.

5.  **Using the Products and the OnLine Products**.

a.  Customer agrees to use only the most recent release of the Software that has been provided to Customer by Licensor.

b.  Customer shall be solely responsible for selecting appropriate participants to use the Software.

c.  Except as otherwise agreed in writing, installation of all Software is the responsibility of Customer. Customer is solely responsible for providing the computer equipment, other software, headphones, telecommunications links, and/or Internet access required to run the Software in accordance with the system requirements provided by SLC. Customer is solely responsible for all expenses incurred by it in using the Software.

d.  Customer agrees to keep any activation, product, organization or other codes or identification numbers issued to Customer by Licensor confidential and to use them only for purposes of using the Software under the terms of this Agreement.

e.  Customer is responsible for controlling and managing access to the OnLine Products and the data stored on those Products, using user identifications provided by Licensor and generated by Customer. Customer agrees that in using the OnLine Products and reports generated by those Products, Customer will comply with all applicable federal and state privacy and student records laws.

f.  Customer agrees that any per participant license purchased will be used only for a single participant and will not be re-used for any other person.

g.  Customer acknowledges that certain Product licenses require the CD for that Product to be in the applicable computer during use.

6.  **Support and Other Services.** If the Order Document specifies support or other services to be provided by SLC, the following terms govern such services.

a.  Support consists of access to (i) SLC's technical, professional and customer service representatives by telephone, email or Web chat during SLC's standard service days and hours; (ii) corrective updates and minor modifications to the Products that may be made available by SLC without further charge to its support customers from time to time; and (iii) manuals, guides and training materials, in electronic format, that may be made available by SLC without further charge to its support customers from time to time. Standard service days and hours will be stated on SLC's web site, and may be changed by SLC from time to time. Support does not include access to new products, new editions, new versions, or new releases (as such are specified by SLC) that may be made available by SLC from time to time.

b.  Support is limited to the Products and time period specified for support in the Order Document. If Customer and SLC agree to expand the Products covered or renew the term, that change will require an additional support fee, and will be on the terms specified in these Terms and Conditions, unless SLC has provided Customer with new or additional terms governing such renewal.

c.  If an Order Document specifies a per participant license and does not contain any separate charge for support, 20% of the price of the license shall be allocated to support.

d.  Once a new release or new version of Software has been released, support will be available only until the service "end of life" of such prior release or version as determined by SLC in its sole discretion, provided, however that the "end of life" will not occur until at least one year after the new release or version is first made available.

e.  SLC may provide support or other services through its own personnel or contractors.

f.  SLC is required to provide only the number of CDs for Products specified in the Order Document. Additional or replacement copies of CDs may be available for purchase under SLC's standard terms. If additional or replacement CDs are provided, the Software on such CDs shall be subject to the same license terms as the original CDs to which they relate, and upon delivery shall be included within the term Software for purposes of this Agreement.

g.  If SLC provides Customer with any support, upgrade or update software not subject to a subsequent license, that additional software shall be subject to the same license terms as the Software to which it relates and upon delivery shall be included in the term Software for purposes of this Agreement.

h.  If Customer requests services outside the scope of the services specified in an accepted Order Document, SLC may charge Customer for those services at SLC's then-current time and materials rates and may require payments and/or a purchase order prior to providing such services.

i.  To receive support or on-site services, Customer shall (i) supply SLC with sufficient information and data to reproduce the problem: (ii) use the Software on computer and operating systems consistent with SLC's requirements; (iii) use a release of the Software then being supported by SLC; and (iv) maintain an operating environment free of any programs or modifications that might interfere with the Software.

j.  With respect to on-site services:

(i)    Customer shall provide clear and unencumbered access to all computer systems with respect to which such services are to be performed.

(ii)   Service days will be scheduled by mutual agreement of Customer and SLC. SLC incurs significant expense in preparing for service days, and requires two business days' notice if Customer wishes to reschedule mutually agreed-upon dates. If Customer reschedules less than two business days prior to a scheduled day, then one day will be subtracted from the total days of service remaining.

      (iii)     All service days must be scheduled and delivered within the applicable period specified in the Order Document.

      (iv)     Customer agrees to abide by any limitation communicated by SLC with respect to the number of persons permitted to attend a training class.

  k.  Additional restrictions or limitations relating to services may be specified in the Order Document.

7. **Restrictions.** Customer agrees not to, and agrees to cause all persons to whom it makes Licensed Material available not to:

  a.  Use, copy, rent, lease, lend, license, sublicense, sell, export, assign, transfer, redistribute or in any other way disseminate the Licensed Material, except as expressly permitted by this Agreement. Customer is permitted to copy certain files from the Products onto the hard drive of the computer on which the Product is being used in order to optimize the performance of the Product, provided that the copied files may only be used subject to the restrictions of the applicable license, as outlined in this Agreement. Customer may copy manuals and training materials provided by Scientific Learning, for use only in connection with use of the Software as permitted under Customer's license. Any permitted copy must fully preserve all proprietary, copyright and identification notices contained in the original Licensed Material.

  b.  Reverse engineer, decompile, disassemble or otherwise attempt to derive the source code for the Software.

  c.  Modify, translate or create derivative works or adaptations from the Licensed Material.

  d.  Use any Licensed Material that is not Software other than in connection with and to facilitate the use of the Software.

  e.  Modify or attempt to modify any license terms encoded in the Software or modify any settings on a computer for the purpose of circumventing the limitations of the license.

FAILURE TO COMPLY WITH THESE RESTRICTIONS WILL CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT AND A VIOLATION OF THE LAW, AND WILL GIVE SLC THE RIGHT TO IMMEDIATELY TERMINATE THIS AGREEMENT AND ALL RIGHTS GRANTED HEREBY. ALL RIGHTS NOT EXPRESSLY GRANTED BY THIS AGREEMENT ARE RESERVED BY SLC.

8. **Limited Warranty.** Licensor warrants to Customer that the Software will have substantially the functionality described in the Manuals and Guides that accompany the Software for a period of 90 days from the applicable invoice date. The limited warranty applies only if the Software is used in accordance with the published instructions for its use, and will not apply if the failure resulted from accident, abuse or misapplication or to the extent the Software is combined with any software product not provided by SLC. Licensor does not warrant that the Software will operate or be accessible without interruption, be error or bug-free, or be compatible with particular computer equipment or other software on or with which Customer wishes to use it. The exclusive remedy for any breach of this limited warranty is, at Licensor's option, the repair or replacement of the Software, or (upon return of the affected Software and related documents and the termination of the license with respect to the Software) the refund of all or a pro rata portion of the license fee paid for the applicable license. The foregoing states the complete and entire remedies that Customer has under this warranty. Neither SLC nor any other Licensor shall have any responsibility for any warranty claims made outside of the warranty period.

9. **No Other Warranties; Limitation of Liability.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, LICENSOR, ON BEHALF OF ITSELF AND ITS LICENSORS, DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE SOFTWARE OR ANY SERVICES PROVIDED UNDER THIS AGREEMENT, EITHER EXPRESSED, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NONINFRINGEMENT. LICENSOR MAKES NO WARRANTY WITH RESPECT TO THE EFFICACY OF ANY SOFTWARE, INCLUDING BUT NOT LIMITED TO ITS EFFICACY IN DEALING WITH ANY LEARNING DISABILITY OR OTHER CONDITION. REGARDLESS OF THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES, IN NO EVENT WILL LICENSOR OR ITS LICENSORS BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR EXEMPLARY DAMAGES WHATSOEVER ARISING OUT OF THIS AGREEMENT OR THE USE OF OR INABILITY TO USE ANY PRODUCT OR SERVICE PROVIDED HEREUNDER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST INFORMATION, LOST REVENUES OR PROFITS OR BUSINESS INTERRUPTION), HOWEVER ARISING AND UNDER ANY THEORY OF LIABILITY INCLUDING, WITHOUT LIMITATION, BREACH OF CONTRACT, BREACH OF WARRANTY, OR TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) EVEN IF LICENSOR OR ITS LICENSORS HAVE BEEN ADVISED OF OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL LICENSOR OR ITS LICENSORS BE LIABLE IN DAMAGES OR OTHERWISE IN EXCESS OF THE AMOUNT PAID TO LICENSOR FOR THE SOFTWARE OR SERVICE ON WHICH THE CLAIM IS BASED. IN ADDITION, IN NO EVENT WILL THE LIABILITY OF LICENSOR AND ITS LICENSORS RELATING TO SUPPORT SERVICES EXCEED THE TOTAL AMOUNT OF MONEY PAID BY CUSTOMER TO LICENSOR DURING THE IMMEDIATELY PRECEDING 12-MONTH PERIOD WITH RESPECT TO THE PARTICULAR SUPPORT SERVICES ON WHICH THE CLAIM IS BASED. CUSTOMER ACKNOWLEDGES AND AGREES THAT THE DISCLAIMER OF WARRANTIES, LIMITATIONS ON LIABILITY AND LIMITED REMEDIES CONTAINED IN THIS AGREEMENT ARE FUNDAMENTAL PARTS OF THE BASIS OF LICENSOR'S BARGAIN HEREUNDER. SOME JURISDICTIONS DO NOT PERMIT THE EXCLUSION OF CERTAIN TYPES OF DAMAGES OR THE DISCLAIMER OF CERTAIN IMPLIED WARRANTIES, SO SOME OF THE FOREGOING MAY NOT BE APPLICABLE. TO THE EXTENT THAT LICENSOR MAY NOT DISCLAIM ANY WARRANTY, THE SCOPE AND DURATION OF SUCH WARRANTY SHALL BE THE MINIMUM PERMITTED UNDER APPLICABLE LAW.

10. **General**

  a.  **Use of Data.** Customer agrees that SLC may use any data or information transmitted or otherwise provided to SLC or relating to the Software or Customer's activities related to or results obtained by using the Software, including results on tests and other assessments, for research, norming, marketing and other purposes, provided that Customer may not be identified as the source of any particular information without Customer's prior consent and provided that all participants shall remain anonymous unless they otherwise consent.

3

b. **Taxes.** Customer agrees to pay Licensor all applicable sales, use or other taxes related to this Agreement, however designated, except for taxes based on Licensor's income. If Customer claims tax exempt status, Customer agrees to provide Licensor with evidence of such tax exemption upon Licensor's request. All pricing set forth in the Order Document in United States dollars.

c. **Breach; Termination.** Licensor shall have the right to suspend its performance and Customer's right to use the Software under this Agreement if Customer fails to pay any fee when due or breaches any of its obligations under this Agreement. Licensor also reserves the right to charge interest on late payments. In addition, either party shall have the right to terminate this Agreement in whole or in part upon 30 days written notice to the other party, in the event the other party materially breaches this Agreement and fails to correct such breach within such 30-day period.

d. **Audit.** Customer agrees, at Licensor's request, to give Licensor reasonable access to Customer's premises and records and to all computers on which the Software has been used or through which the OnLine Products have been accessed for the purpose of auditing Customer's compliance with this Agreement. If Licensor's audit finds that Customer has used Software in a manner not permitted by this Agreement, Customer will pay Licensor any additional fees due under Licensor's standard pricing schedule.

e. **Entire Agreement.** These Terms and Conditions, the Order Document, any signed written agreement between Licensor and Customer relating to this license and the documents to which they refer constitute the entire agreement between Licensor and Customer relating to the subject matter hereof. This Agreement may not be changed in any way except by a writing executed by both parties. If Customer submits a purchase order to purchase licenses or services under this Agreement, any terms of that purchase order that are different from the terms of this Agreement shall be of no effect. The waiver or failure of Licensor to exercise any rights under this Agreement will not be deemed a waiver of any further right under this Agreement.

f. **Severability.** If any term of this Agreement is declared invalid by a court of competent jurisdiction or by operation of law, the remaining terms will be unimpaired, and the invalid term will be replaced by such valid term as comes closest to the intention underlying the invalid term.

g. **Force Majeure.** Neither party shall be liable for any failure to perform hereunder due to causes beyond its reasonable control.

h. **International.** The parties hereby confirm their request that this Agreement and all documents related directly or indirectly thereto be drafted in the English language. Les parties aux présentes reconnaissent avoir requis que la présente convention ainsi que tous les documents qui s'y rattachent directement ou indirectement soient rédigés en langue anglaise. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to any of the transactions, which are contemplated by this Agreement.

i. **US Government End Users.** If Customer is a branch or agency of the US government: The Licensed Materials are composed of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 CFR 12.212 (SEPT. 1995) and are provided to the Government (a) for acquisition by or on behalf of civilian agencies, consistent with the policy set forth in 48 CFR 12.212; or (b) for acquisition by or on behalf of units of the Department of Defense consistent with the policies set forth in 48CFR 227.7202-1 (Jun 1995) and 227.7202-3 (Jun 1995).

# EXHIBIT C

JUN-28-2004 MON 02:35 PM EVANS    Greg Steller    FAX NO. 1    610-789-2281    P. 02

# Scientific Learning

## Order Form

| Customer Name (School Dist./Org.) | Christina School District, DE | Customer Contact: | Ms. Margaret Sharp, Dir Elem Edu<br>Phone:302-454-2525<br>Fax: 302-454-2388<br>SHARPM@christina.k12.de.us |
|---|---|---|---|
| Ship to: Name & Address | Margaret Sharp<br>Christina School District<br>83 E Main St<br>Newark, DE 19711-4645 | Bill to: Address | Margaret Sharp<br>Christina School District<br>83 E Main St<br>Newark, DE 19711-4645 |

| Org ID | Contact Name & Phone Number | Name & Site Address |
|---|---|---|
| 30879 | Malvine Richard<br>302-429-4146 | Douglass School<br>1800 Prospect Rd<br>Wilmington, DE 19805-4104 |
| 30866 | Rick Bartkowski<br>302-454-2131 | Jones Elem School<br>35 W Main St<br>Newark, DE 19702-1504 |
| 30865 | Marlene E. James<br>302-454-5454 | Brookside Elementary School<br>800 Marrows Rd<br>Newark, DE 19713-1515 |
| 30877 | Helen Specht<br>302-454-2180 | Wilson Elem School<br>14 Forge Rd<br>Newark, DE 19711-7619 |
| 30880 | Richelle Talbert<br>302-454-5959 | Brader Elem School<br>107 Four Seasons Pky<br>Newark, DE 19702-2326 |
| 30874 | Todd Harvey<br>302-454-2174 | Smith Elem School<br>142 Brennan Dr<br>Newark, DE 19713-3906 |
| 30867 | Denise Schwartz<br>302-454-2133 | Downes Elem School<br>220 Casho Mill Rd<br>Newark, DE 19711-2618 |
| 30870 | Linda Ochenrider<br>302-454-2103 | Leasure Elem School<br>1015 Church Rd<br>Newark, DE 19702-5101 |
| 30871 | Charles Haywood<br>302-454-2142 | Maclary Elem Sch<br>300 St Regis Dr<br>Newark, DE 19711-3893 |
| 30869 | Pamela Waun<br>302-454-2464 | Gallaher Elem School<br>800 N Brownleaf Rd<br>Newark, DE 19713-3317 |
| 30872 | Susan Zigler<br>302-454-2145 | Mcvey Elem School<br>908 Janice Dr<br>Newark, DE 19713-4040 |
| 30883 | Elva Brooks<br>302-454-4700 | Marshall Elem School<br>101 Barrett Run Rd<br>Newark, DE 19702-2949 |

Gateway Migration 4.03

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 500
Oakland, CA, 94612



JUN-28-2004 MON 05:12p    Greg Steller              610-789-2281    P.4

JUN-28-2004 MON 02:36 PM EVANS              FAX NO. 1              P. 04

| Henry M Brader Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
|---|---|---|---|---|---|---|---|
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| Jennie E Smith Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| John R Downes Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| May B Leasure Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| R Elisabeth Maclary Elem Sch | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |

Corporate Taxpayer ID #94-3234658

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 500
Oakland, CA, 94612
Scientific
Learning.



Greg Steller

JUN-28-2004 MON 02:35 PM EVANS          FAX NO. 1          610-789-2281          P.3

                                                                                    P. 03

| 30876 | David McCarthy<br>302-454-2290 | West Park Elementary School<br>193 W Park Pl<br>Newark, DE 19711-4520 |
| 208675 | Beatrice Speir<br>302-454-2018 | Keene Elem School<br>200 Lagrange Ave<br>Newark, DE 19702-3516 |
| 30858 | Robert Anderson<br>302-454-2381 | Glasgow High School<br>1901 S College Ave<br>Newark, DE 19702-2385 |

**Software products licensed for use only at the above site(s):**

| Site | Products | License Type | # of CDs provided | License Start Date | License Term | Support Term Start Date | Support Term End Date |
|---|---|---|---|---|---|---|---|
| Douglass School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 6( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Middle & High School GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| Albert H Jones Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 6( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| Brookside Elementary School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 6( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| Etta J Wilson Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 6( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |

Corporate Taxpayer ID #94-3234458

Please fax Order Form to 510-636-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 500
Oakland, CA, 94612





Scientific
Learning.

JUN-28-2004 MON 02:36 PM EVANS          Greg Steller          610-789-2281          P.S

FAX NC. 1          P. 05

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Robert S Gallaher Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| Joseph M Mcvey Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| Thurgood Marshall Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| West Park Elementary School | Fast ForWord Basics | Disc | 10( 30 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| William B Keene Elem School | Fast ForWord Basics | Disc | 10( 30 CDs) | immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.1 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast Forword BookShelf Vol.2 | Disc | 1( 5 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Reading Edge | Disc | 8( 32 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| Glasgow High School | Fast ForWord Basics | Disc | 1( 3 CDs) | Immediate | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Language to Reading GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Middle & High School GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 1 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 2 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 3 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |
| | Fast ForWord Reading 4 GW Ed. | Site | 30 | 8/1/04 | Perpetual | 8/1/04 | 8/1/07 |

Corporate Taxpayer ID #94-3234458

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 500
Oakland, CA, 94612
Scientific
Learning.



JUN 28 04 05:13p    Greg Steller                610-789-2281              P.6
JUN-28-2004 MON 02:36 PM EVANS              FAX NO. 1                  P. 06

| Site | Online Products | License Type | Access Term Start Date | Access Term End Date | Support Term Start Date | Support Term End Date |
|------|-----------------|--------------|------------------------|---------------------|------------------------|----------------------|
| Douglass School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Albert H Jones Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Brookside Elementary School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Etta J Wilson Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Henry M Brader Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Jennie E Smith Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| John R Downes Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07. | 8/1/04 | 8/1/07 |
| May B Leasure Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| R Elisabeth Maclary Elem Sch | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Robert S Gallaher Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Joseph M Mcvey Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Thurgood Marshall Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| West Park Elementary School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| William B Keene Elem School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |
| Glasgow High School | Progress Tracker Online Data System | Site | 8/1/04 | 8/1/07 | 8/1/04 | 8/1/07 |

Corporate Taxpayer ID #94-3234458

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 500
Oakland, CA, 94612
Scientific
Learning.

COPY

05:13p    Greg Steller

JN-28-2004 MON 02:37 PM EVANS              610-789-2281        P.7

FAX NO. 1                                P. 07

At the end of the applicable terms stated above, access to ongoing support, maintenance and the Program Tracker Online Data System is available for an additional annual fee.

**Fast ForWord to Learning: Training and Consulting Services**

- ➤ Implementation Management for 15 sites
- ➤ Centralized Initial Training: Five 2-day (consecutive) sessions to be shared by 15 sites
- ➤ Follow-up Training (Four 2-day sessions) to be shared by 15 sites
- ➤ 15 Two-day (consecutive) sessions of Professional Development to be shared by 15 sites
- ➤ Installation at 15 sites: 2 Three-day (consecutive) sessions to be shared by 15 sites
- ➤ Implementation Management for existing sites
- ➤ Refresher Training for 6 existing sites: 1 day to be shared by 6 sites
- ➤ Fast ForWord to Learning Online Products:
  - ○ Fast ForWord Getting Started (CrossTrain): self-paced training on how to administer the Fast ForWord products: perpetual site license for site specified above
  - ○ BrainConnection.com professional development courses: 10 single-course registrations during the first 12 months of the site license term for 15 sites

| Fee: $841,371.00 | Check one: | Subject to sales tax (will be added to invoice to Institution) |
|---|---|---|
| | X | Tax exempt (please provide sales tax exempt certificate issued by your state) |

| Payment Provisions: The district or a third party designated by the district will provide payment within 15 days of receipt of invoice. | Other Provisions: This pricing reflects the Customer Appreciation Discount, a Partnership volume discount, and the Go Big! promotion. This offer expires 06/30/04, this Order Form and fully executed financing documents must be signed and returned by this date. |
|---|---|

Customer agrees to purchase and Scientific Learning agrees to sell and provide the licenses and services specified above. Customer agrees to pay the fee specified above on the specified terms. This Order Form is subject to the Terms and Conditions that accompany the software, a copy of which has been provided to and reviewed by Customer. This Order Form and those Terms and Conditions constitute the complete and entire agreement between SLC and the Customer with respect to the licenses and services specified above.

Ordered by: Christina School District

By: _____

Name: DAVID M. SUNDMAN

Title: ASSISTANT SUPERINTENDENT

Date: JUNE 25/04

Accepted by Scientific Learning Corporation

By: _____

Name: _____

Title: _____

Date: 06/28/04

Corporate Taxpayer ID #94-3234458

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 500
Oakland, CA, 94612

Scientific Learning.



**TERMS AND CONDITIONS**

**These Terms and Conditions, together with the accompanying Order Form or other mutually agreeable written document specifying the licenses and/or services being purchased (the "Order Document") form a legal agreement (the "Agreement") between Scientific Learning Corporation ("SLC" or the "Licensor") and the individual or entity who is the Customer under the Order Document ("Customer").**

1.  **Scope of Agreement.**  The terms of the Agreement govern:
    a.  Customer's license to the software product(s) specified in the Order Document (the "Products");
    b.  Customer's access to the Progress Tracker online data system with respect to the Products or other web-based products or services (together, the "OnLine Products"), if access to such OnLine Products is specified in the Order Document; and
    c.  Customer's purchase of support or other services, if such services are specified in the Order Document.

    For purposes of this Agreement, the term Software means both the Products and, if applicable, the software used in the OnLine Products, together with any related technical support or professional development software that Licensor may provide to Customer and that is not specified in the Order Document or other agreement. Software does not include any software programs that may be included on discs that may be shipped to Customer but are not specified in an applicable Order Document.

2.  **License.** Licensor grants to Customer, and Customer accepts, a limited, non-exclusive, nontransferable license to use the Products (in object code only), the OnLine Products (only via access to the user interface over the World Wide Web), and the manuals and documentation (written or on-line) provided to Customer in connection with the Software (collectively, the "Licensed Material"), solely for educational and related administrative purposes and subject to the terms provided in this Agreement. The Licensed Material is protected by trade secret and/or copyright law and is proprietary to Licensor and/or its licensors. The Licensed Material is licensed, not sold.

3.  **Definitions of Particular License Categories.** The following terms, if used in the Order Document, have the meanings set forth below:
    a.  For use at a specified site: the Software may be used only at the physical site specified. The physical location may not be changed without Licensor's prior written consent.
    b.  Site license: Products subject to a site license may be used only at the physical site specified, by an unlimited number of students who are regularly enrolled students at that site. If the Progress Tracker online data system is licensed under a site license, it may be used only in connection with any students who are regularly enrolled students at the specified site. Online Products that are professional development, training or support products may be used only by persons who are providing services for the specified site.
    c.  Workstation license: the Software may be installed or used only on the specified number of workstations by students who are regularly enrolled students at the specified site(s). If the Software is installed in a network configuration in which the host computer does not permit the use of the Software by students, the host computer is not counted towards the workstation limit, but all computers used by students are counted. All of the Products licensed for a specified workstation limit must be installed on the same workstations; one product may not be installed on one workstation and a second product on a different workstation.
    d.  Specified students (for example, students receiving particular services or students in particular grades): the Software may be used only with students who are within the specified groups by students who are regularly enrolled students at the specified site(s).
    e.  Disc license: the maximum number of simultaneous users of the Software may not exceed the number of CDs containing the product that have been provided by Licensor under the license.
    f.  Start date: the date that the license for the Software begins.
    g.  Term: The Software may be used by students or others using the exercises (participants) only during the time period specified as the license term. Participants may not use the Software after the end of the specified time period.
    h.  Per participant license: The Customer may use the Software with a maximum aggregate number of participants equal to the number of per participant licenses purchased. Each time a Software product is used by a different person counts as one participant, even if a given individual uses more than one product.
    Order Documents may include additional restrictions, limitations or other terms relating to the Software being licensed.

4.  **Progress Tracker OnLine Data System and Other OnLine Products**. If the Order Document specifies access to the Progress Tracker OnLine Data System or other online products or services (collectively, "OnLine Products"), the following terms govern such access.
    a.  The license to and use of the Progress Tracker System requires payment of an initial license fee, which is due in connection with beginning access to the system, and a periodic access fee, which permits access over a specified period of time. The initial license fee does not permit access to the Progress Tracker system unless access rights are also in force.
    b.  A single course registration entitles one person to enroll in one specified online product.
    c.  The OnLine Products are maintained on SLC servers and provided to Customer via the World Wide Web. SLC is not responsible for any incompatibility between the OnLine Products and services provided by Customer's Internet service provider.

1

d. OnLine Products may be used only in connection with the Products and/or for professional development and training of Customer's teachers and other staff. Customer acknowledges that not all Products may feature Progress Tracker system access.

e. SLC may, from time to time, in its sole discretion, add new content to or modify or discontinue content contained in the OnLine Products.

f. Access to the OnLine Products is provided only for the limited term specified in the Order Document. If Customer and Licensor agree to renew the term, the renewal will require an additional fee and will be on the terms specified in these Terms and Conditions, unless Licensor has provided Customer with new or additional terms governing such renewal.

5. **Using the Products and the OnLine Products.**

a. Customer agrees to use only the most recent release of the Software that has been provided to Customer by Licensor.

b. Customer shall be solely responsible for selecting appropriate participants to use the Software.

c. Except as otherwise agreed in writing, installation of all Software is the responsibility of Customer. Customer is solely responsible for providing the computer equipment, other software, headphones, telecommunications links, and/or Internet access required to run the Software in accordance with the system requirements provided by SLC. Customer is solely responsible for all expenses incurred by it in using the Software.

d. Customer agrees to keep any activation, product, organization or other codes or identification numbers issued to Customer by Licensor confidential and to use them only for purposes of using the Software under the terms of this Agreement.

e. Customer is responsible for controlling and managing access to the OnLine Products and the data stored on those Products, using user identifications provided by Licensor and generated by Customer. Customer agrees that in using the OnLine Products and reports generated by those Products, Customer will comply with all applicable federal and state privacy and student records laws.

f. Customer agrees that any per participant license purchased will be used only for a single participant and will not be re-used for any other person.

g. Customer acknowledges that certain Product licenses require the CD for that Product to be in the applicable computer during use.

6. **Support and Other Services.** If the Order Document specifies support or other services to be provided by SLC, the following terms govern such services.

a. Support for Products consists of access to (i) SLC's technical, professional and customer service representatives by telephone, email or Web chat during SLC's standard service days and hours; (ii) technical updates and minor modifications to the Products that may be made available by SLC without further charge to its support customers from time to time; and (iii) Web-based informational sessions, manuals, guides, training materials, and other implementation resources, in electronic format, that may be made available by SLC without further charge to its support customers from time to time. Standard service days and hours will be stated on SLC's web site, and may be changed by SLC from time to time. Support does not include access to new products, new editions, new versions, or new releases (as such are specified by SLC) that may be made available by SLC from time to time.

b. Support for the Progress Tracker On-Line product includes (i) access to SLC's technical, professional and customer service representatives by telephone, email or Web chat during SLC's standard service days and hours; and (ii) for the Gateway Edition of Progress Tracker, automatic progress reports sent monthly to up to five designated Customer administrative personnel.

c. Support is limited to the Products, On-Line Products, and time period specified for support in the Order Document. If Customer and SLC agree to expand the Products covered or renew the term, that change will require an additional support fee, and will be on the terms specified in these Terms and Conditions, unless SLC has provided Customer with new or additional terms governing such renewal.

d. If an Order Document specifies a per participant license and does not contain any separate charge for support, 20% of the price of the license shall be allocated to support.

e. Once a new release or new version of Software has been released, support will be available only until the service "end of life" of such prior release or version as determined by SLC in its sole discretion, provided, however that the "end of life" will not occur until at least one year after the new release or version is first made available.

f. SLC may provide support or other services through its own personnel or contractors.

g. SLC is required to provide only the number of CDs for Products specified in the Order Document. Additional or replacement copies of CDs may be available for purchase under SLC's standard terms. If additional or replacement CDs are provided, the Software on such CDs shall be subject to the same license terms as the original CDs to which they relate, and upon delivery shall be included within the term Software for purposes of this Agreement.

h. If SLC provides Customer with any support, upgrade or update software not subject to a subsequent license, that additional software shall be subject to the same license terms as the Software to which it relates and upon delivery shall be included in the term Software for purposes of this Agreement.

i. If Customer requests services outside the scope of the services specified in an accepted Order Document, SLC may charge Customer for those services at SLC's then-current time and materials rates and may require payments and/or a purchase order prior to providing such services.

j. To receive support or on-site services, Customer shall (i) supply SLC with sufficient information and data to reproduce the problem; (ii) use the Software on computer and operating systems consistent with SLC's requirements; (iii) use a

release of the Software then being supported by SLC; and (iv) maintain an operating environment free of any programs or modifications that might interfere with the Software.

k.  With respect to on-site services:

(i)     Customer shall provide clear and unencumbered access to all computer systems with respect to which such services are to be performed.

(ii)    Service days will be scheduled by mutual agreement of Customer and SLC. SLC incurs significant expense in preparing for service days, and requires two business days' notice if Customer wishes to reschedule mutually agreed-upon dates. If Customer reschedules less than two business days prior to a scheduled day, then one day will be subtracted from the total days of service remaining.

(iii)   All service days must be scheduled and delivered within the applicable period specified in the Order Document.

(iv)    Customer agrees to abide by any limitation communicated by SLC with respect to the number of persons permitted to attend a training class.

l.  Additional restrictions or limitations relating to services may be specified in the Order Document.

7.  **Restrictions.** Customer agrees not to, and agrees to cause all persons to whom it makes Licensed Material available not to:

a.  Use, copy, rent, lease, lend, license, sublicense, sell, export, assign, transfer, redistribute or in any other way disseminate the Licensed Material, except as expressly permitted by this Agreement. Customer is permitted to copy certain files from the Products onto the hard drive of the computer on which the Product is being used in order to optimize the performance of the Product, provided that the copied files may only be used subject to the restrictions of the applicable license, as outlined in this Agreement. Customer may copy manuals and training materials provided by Scientific Learning, for use only in connection with use of the Software as permitted under Customer's license. Any permitted copy must fully preserve all proprietary, copyright and identification notices contained in the original Licensed Material.

b.  Reverse engineer, decompile, disassemble or otherwise attempt to derive the source code for the Software.

c.  Modify, translate or create derivative works or adaptations from the Licensed Material.

d.  Use any Licensed Material that is not Software other than in connection with and to facilitate the use of the Software.

e.  Modify or attempt to modify any license terms encoded in the Software or modify any settings on a computer for the purpose of circumventing the limitations of the license.

FAILURE TO COMPLY WITH THESE RESTRICTIONS WILL CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT AND A VIOLATION OF THE LAW, AND WILL GIVE SLC THE RIGHT TO IMMEDIATELY TERMINATE THIS AGREEMENT AND ALL RIGHTS GRANTED HEREBY. ALL RIGHTS NOT EXPRESSLY GRANTED BY THIS AGREEMENT ARE RESERVED BY SLC.

8.  **Limited Warranty.** Licensor warrants to Customer that the Software will have substantially the functionality described in the Manuals and Guides that accompany the Software for a period of 90 days from the applicable invoice date. The limited warranty applies only if the Software is used in accordance with the published instructions for its use, and will not apply if the failure resulted from accident, abuse or misapplication or to the extent the Software is combined with any software product not provided by SLC. Licensor does not warrant that the Software will operate or be accessible without interruption, be error or bug-free, or be compatible with particular computer equipment or other software on or with which Customer wishes to use it. The exclusive remedy for any breach of this limited warranty is, at Licensor's option, the repair or replacement of the Software, or (upon return of the affected Software and related documents and the termination of the license with respect to the Software) the refund of all or a pro rata portion of the license fee paid for the applicable license. The foregoing states the complete and entire remedies that Customer has under this warranty. Neither SLC nor any other Licensor shall have any responsibility for any warranty claims made outside of the warranty period.

9.  **No Other Warranties; Limitation of Liability.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, LICENSOR, ON BEHALF OF ITSELF AND ITS LICENSORS, DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE SOFTWARE OR ANY SERVICES PROVIDED UNDER THIS AGREEMENT, EITHER EXPRESSED, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NONINFRINGEMENT. LICENSOR MAKES NO WARRANTY WITH RESPECT TO THE EFFICACY OF ANY SOFTWARE, INCLUDING BUT NOT LIMITED TO ITS EFFICACY IN DEALING WITH ANY LEARNING DISABILITY OR OTHER CONDITION. REGARDLESS OF THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES, IN NO EVENT WILL LICENSOR OR ITS LICENSORS BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR EXEMPLARY DAMAGES WHATSOEVER ARISING OUT OF THIS AGREEMENT OR THE USE OF OR INABILITY TO USE ANY PRODUCT OR SERVICE PROVIDED HEREUNDER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST INFORMATION, LOST REVENUES OR PROFITS OR BUSINESS INTERRUPTION), HOWEVER ARISING AND UNDER ANY THEORY OF LIABILITY INCLUDING, WITHOUT LIMITATION, BREACH OF CONTRACT, BREACH OF WARRANTY, OR TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) EVEN IF LICENSOR OR ITS LICENSORS HAVE BEEN ADVISED OF OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL LICENSOR OR ITS LICENSORS BE LIABLE IN DAMAGES OR OTHERWISE IN EXCESS OF THE AMOUNT PAID TO LICENSOR FOR THE SOFTWARE OR SERVICE ON WHICH THE CLAIM IS BASED. IN ADDITION, IN NO EVENT WILL THE LIABILITY OF LICENSOR AND ITS LICENSORS RELATING TO SUPPORT SERVICES EXCEED THE TOTAL AMOUNT OF MONEY PAID BY CUSTOMER TO LICENSOR DURING THE IMMEDIATELY PRECEDING 12-MONTH PERIOD WITH RESPECT TO THE PARTICULAR SUPPORT SERVICES ON WHICH THE CLAIM IS BASED. CUSTOMER ACKNOWLEDGES AND AGREES THAT THE DISCLAIMER OF WARRANTIES, LIMITATIONS ON LIABILITY AND LIMITED REMEDIES CONTAINED IN THIS AGREEMENT ARE FUNDAMENTAL PARTS OF THE BASIS OF LICENSOR'S BARGAIN HEREUNDER. SOME JURISDICTIONS DO NOT PERMIT THE EXCLUSION OF CERTAIN TYPES OF DAMAGES OR THE DISCLAIMER OF CERTAIN IMPLIED WARRANTIES, SO SOME OF THE FOREGOING MAY NOT BE APPLICABLE. TO THE EXTENT THAT LICENSOR MAY NOT DISCLAIM ANY WARRANTY, THE SCOPE AND DURATION OF SUCH WARRANTY

SHALL BE THE MINIMUM PERMITTED UNDER APPLICABLE LAW.

10. **General**
   a. **Use of Data.** Customer agrees that SLC may use any data or information transmitted or otherwise provided to SLC or relating to the Software or Customer's activities related to or results obtained by using the Software, including results on tests and other assessments, for research, norming, marketing and other purposes, provided that Customer may not be identified as the source of any particular information without Customer's prior consent and provided that all participants shall remain anonymous unless they otherwise consent.
   b. **Taxes.** Customer agrees to pay Licensor all applicable sales, use or other taxes related to this Agreement, however designated, except for taxes based on Licensor's income. If Customer claims tax exempt status, Customer agrees to provide Licensor with evidence of such tax exemption upon Licensor's request. All pricing set forth in the Order Document in United States dollars.
   c. **Breach; Termination.** Licensor shall have the right to suspend its performance and Customer's right to use the Software under this Agreement if Customer fails to pay any fee when due or breaches any of its obligations under this Agreement. Licensor also reserves the right to charge interest on late payments. In addition, either party shall have the right to terminate this Agreement in whole or in part upon 30 days written notice to the other party, in the event the other party materially breaches this Agreement and fails to correct such breach within such 30-day period.
   d. **Audit.** Customer agrees, at Licensor's request, to give Licensor reasonable access to Customer's premises and records and to all computers on which the Software has been used or through which the OnLine Products have been accessed for the purpose of auditing Customer's compliance with this Agreement. If Licensor's audit finds that Customer has used Software in a manner not permitted by this Agreement, Customer will pay Licensor any additional fees due under Licensor's standard pricing schedule.
   e. **Entire Agreement.** These Terms and Conditions, the Order Document, any signed written agreement between Licensor and Customer relating to this license and the documents to which they refer constitute the entire agreement between Licensor and Customer relating to the subject matter hereof. This Agreement may not be changed in any way except by a writing executed by both parties. If Customer submits a purchase order to purchase licenses or services under this Agreement, any terms of that purchase order that are different from the terms of this Agreement shall be of no effect. The waiver or failure of Licensor to exercise any rights under this Agreement will not be deemed a waiver of any further right under this Agreement.
   f. **Severability.** If any term of this Agreement is declared invalid by a court of competent jurisdiction or by operation of law, the remaining terms will be unimpaired, and the invalid term will be replaced by such valid term as comes closest to the intention underlying the invalid term.
   g. **Force Majeure.** Neither party shall be liable for any failure to perform hereunder due to causes beyond its reasonable control.
   h. **International.** The parties hereby confirm their request that this Agreement and all documents related directly or indirectly thereto be drafted in the English language. Les parties aux présentes reconnaissent avoir requis que la présente convention ainsi que tous les documents qui s'y rattachent directement ou indirectement soient rédigés en langue anglaise. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to any of the transactions, which are contemplated by this Agreement.
   i. **US Government End Users.** If Customer is a branch or agency of the US government: The Licensed Materials are composed of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 CFR 12.212 (SEPT. 1995) and are provided to the Government (a) for acquisition by or on behalf of civilian agencies, consistent with the policy set forth in 48 CFR 12.212; or (b) for acquisition by or on behalf of units of the Department of Defense consistent with the policies set forth in 48CFR 227.7202-1 (Jun 1995) and 227.7202-3 (Jun 1995).

4

# EXHIBIT D

JUN-28-05  08:10AM  FROM-                                    T-675  P 03/10  F-245

cientific
earning.

EXHIBIT OF-3

## Order Form

| Customer Name School Dist./Org.) | Christina School District | Customer Contact: | Margaret Sharp Phone:302-454-2525 Fax: 302-454-2368 SHARPM@christina.k12.de.us |
|---|---|---|---|
| Ship to: Name & Address | TBD | Bill to: Address | Margaret Sharp Christina School District 83 E Main St Newark, DE 19711-4645 |

Bill To

| g ID | Contact Name & Phone Number | Name & Site Address |
|---|---|---|
| 860 | TBD | Gauger-Cobbs Middle School 50 Gender Road Newark, DE 19713-2897 |
| 859 | TBD | Newark High School 750 E. Delaware Avenue Newark, DE 19711-7188 |
| 861 | TBD | George V. Kirk Middle School 140 Brennen Drive Newark, DE 19713-3999 |
| 862 | TBD | Shue-Medill Middle School 1550 Capitol Trl Newark, DE 19711-5715 |
| 3567 | TBD | Sarah Pyle Academy for Academic Intensity 500 N. Lombard Street Wilmington, DE 19801 |

New District address
600 North Lombard St,
Wilmington, DE 1801

entered into Vantiv O

der Form

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 600



JUN-28-05  08:11AM  FROM-                                                    T-675   P 04/10  F-245

are products licensed for use only at the sites as stated below:

| Site | Products | # of CDs provided | License Type | License Term | Support Type | Support Term |
|---|---|---|---|---|---|---|
| r-Cabos e School | Fast ForWord Basics | 10( 30 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.1 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.2 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Reading Edge | 8( 32 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language Basics GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language to Reading GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Middle & High School GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 3 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 1 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 4 GW Ed. | 30 | Site | Perpetual | Premier | 60 full calendar months |
| | Fast ForWord Reading 2 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| th High School | Fast ForWord Basics | 10( 30 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.1 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.2 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Reading Edge | 8( 32 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language Basics GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language to Reading GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Middle & High School GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 3 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 1 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 4 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 2 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| ge V. Kin te School | Fast ForWord Basics | 10( 30 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.1 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.2 | 1( 5 CDs) | Disc | Perpetual | Premier | 60 full calendar months |
| | Reading Edge | 8( 32 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language Basics GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language to Reading GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Middle & High School GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 3 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 1 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 4 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 2 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| -Medill Middle ool | Fast ForWord Basics | 10( 30 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.1 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.2 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Reading Edge | 8( 32 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language Basics GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language to Reading GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Middle & High School GW Ed. | 30 | Site | Perpetual | Premier | 60 full calendar months |
| | Fast ForWord Reading 3 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 1 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 4 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 2 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| th Pyle Academy .cademic sity | Fast ForWord Basics | 10( 30 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.1 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast Forword BookShelf Vol.2 | 1( 5 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Reading Edge | 8( 32 CDs) | Disc | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language Basics GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Language to Reading GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Middle & High School GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 3 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 1 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 4 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |
| | Fast ForWord Reading 2 GW Ed. | 30 | Site | Perpetual | Premier | 50 full calendar months |

orate Taxpayer ID #94-3234458

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 600
Oakland, CA, 94612

Scientific Learning.



JUN-28-05  08:11AM  FROM-                                    T-675   P 05/10   F-245

| School | Product | | | | | |
|---|---|---|---|---|---|---|
| .bert H Jones Elementary, Brookside Elementary School, ate J. Wilson Elementary, Henry t.Brader Elementary, Jennie . Smith Elementary, ohn R. Downes lementary, Joseph LMcVey lementary  May B. eisure ementary,R. sabeth McClary ementary, Roben Gallaher ementary, urgood Marshall ementary, West rk Elementary, & illiam B. Keene ementary | Fast ForWord Language to Reading GW Ed. Fast ForWord Language GW Ed. Fast ForWord Reading 3 GW Ed. Fast ForWord Reading 1 GW Ed. Fast ForWord Reading 4 GW Ed. Fast ForWord Reading 2 GW Ed. | N/A N/A N/A N/A N/A N/A | Site Site Site Site Site Site | Perpetual Perpetual Perpetual Perpetual Perpetual Perpetual | Premier Premier Premier Premier Premier Premier | 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2009 |
| ncroft ermediate School, simer Pulaski ementary, Drew- e Elementary, ert Palmer nool, Stubbs ermediate School, homas F.Bayard mentary | Fast ForWord Language to Reading GW Ed. Fast ForWord Language GW Ed. Fast ForWord Reading 3 GW Ed. Fast ForWord Reading 4 GW Ed. | N/A N/A N/A N/A | Site Site Site Site | Perpetual Perpetual Perpetual Perpetual | Premier Premier Premier Premier | 9/15/2007-9/15/2009 9/15/2007-9/15/2009 9/15/2007-9/15/2009 9/15/2007-9/15/2009 |
| istiana High ool | Fast ForWord Language to Reading GW Ed. Fast ForWord Middle & High School GW Ed. Fast ForWord Reading 3 GW Ed. Fast ForWord Reading 4 GW Ed. Fast ForWord Reading 1 GW Ed. Fast ForWord Reading 2 GW Ed. | N/A N/A N/A N/A 30 30 | Site Site Site Site Site Site | Perpetual Perpetual Perpetual Perpetual Perpetual Perpetual | Premier Premier Premier Premier Premier Premier | 8/12/2005-8/12/2009 8/12/2005-8/12/2009 8/12/2005-8/12/2009 8/12/2005-8/12/2009 8/12/2005-8/12/2009 8/12/2005-8/12/2009 |
| glass School | Fast ForWord Language to Reading GW Ed. Fast ForWord Middle & High School GW Ed. Fast ForWord Language GW Ed. Fast ForWord Reading 3 GW Ed. Fast ForWord Reading 1 GW Ed. Fast ForWord Reading 4 GW Ed. Fast ForWord Reading 2 GW Ed. | N/A N/A N/A N/A N/A N/A N/A | Site Site Site Site Site Site Site | Perpetual Perpetual Perpetual Perpetual Perpetual Perpetual Perpetual | Premier Premier Premier Premier Premier Premier Premier | 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2008 8/1/2007-8/1/2009 |
| gow High ol | Fast ForWord Language to Reading GW Ed. Fast ForWord Middle & High School GW Ed. Fast ForWord Reading 3 GW Ed. Fast ForWord Reading 1 GW Ed. Fast ForWord Reading 4 GW Ed. Fast ForWord Reading 2 GW Ed. | N/A N/A N/A N/A N/A N/A | Site Site Site Site Site Site | Perpetual Perpetual Perpetual Perpetual Perpetual Perpetual | Premier Premier Premier Premier Premier Premier | 8/1/2007-8/1/2009 8/1/2007-8/1/2009 8/1/2007-8/1/2005 8/1/2007-8/1/2009 8/1/2007-8/1/2008 8/1/2007-8/1/2009 |

scate Taxpayer ID #94-3234458

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 600
Oakland, CA, 94612
Scientific



JUN-28-05 08:11AM    FROM-                                          T-675  P 06/10  F-245

| Site | Online Products Licensed | License Type/ Quantity | Online Products Access Term |
|---|---|---|---|
| ...ager-Cobbs Middle School, ...ewark High School. George V. Kirk ...iddle School, Shue-Medill Middle ...chool, & Sarah Pyle Academy for ...cademic Intensity | Progress Tracker Online Data System Fast ForWord Getting Started: web-based product training Brain Connection.com professional development courses | Site Site 10 single course registrations | 50 full calendar months |
| ...bert H Jones Elementary, ...ookside Elementary School, Ella J. ...liton Elementary, Henry M.Brader ...ementary, Jennie E. Smith ...ementary, John R. Downes ...ementary, Joseph M.McVey ...ementary, May B. Leisure ...ementary,R. Elisabeth McClary ...ementary, Robert S. Gallaher ...ementary, Thurgood Marshall ...ementary, West Park Elementary, ...illiam B. Keene Elementary, ...ouglass School, & Glasgow High ...chool | Progress Tracker Online Data System Fast ForWord Getting Started: web-based product training | Site Site | 8/1/2007-8/1/2009 |
| ...incroft Intermediate School, ...asimer Pulaski Elementary, Drew-...le Elementary, Elbert Palmer ...chool, Stubbs Intermediate School, Thomas F.Bayard Elementary | Progress Tracker Online Data System Fast ForWord Getting Started: web-based product training | Site Site | 9/15/2007-8/15/2009 |
| ...iristiana High School | Progress Tracker Online Data System, Fast ForWord Getting Started: web-based product training | Site Site | 8/12/2005-8/12/2009 8/12/2005-8/12/2009 |

`...perpetual licenses, support and online product access terms start at invoice. After the terms listed above, access` `...Online Products and Support must be renewed annually. For budgeting purposes only, the current renewal cost for` `...gress Tracker and Support for the licenses purchased here is $3,500 per site, per year. These prices are subject to` `...nge.`

**...d ForWord to Learning: Training and Consulting Services**
> 26 Executive Administrative Project Development Days 2005-2006
> District-wide full-time dedicated service resource 2005-2006
> All service availability, including any unused service days, expires at the end of the support term stated above. Unused services cannot be carried forward to future periods.

...e: $1,011,781.00          Check one:    ☒  Subject to sales tax (will be added to invoice to invoice) *DE, NO SALES CALIF TAX*

                                          ☒  Tax exempt (please provide sales tax exempt certificate issued by your state) (SEE ATTACHED)

...porate Taxpayer ID #94-3234458

Please fax Order Form to 510-836-6412
Phone: 888-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 600
Oakland, CA, 94612



Scientific Learning

COPY

ayment Provisions: The district or a third party signaled by the district will provide a urchase order or payment within 30 days of ceipt of invoice.

**Other Provisions:**
As part of the Go Big Promo, the district will receive a discount on its purchase of licenses from SLC. As a condition of that discount, the district has agreed that:

1. At one or more schools, the school will assess the reading skills of at least 30 students shortly before and promptly after their use of the Fast ForWord product.

2. The district will provide these pre and post assessment results for each of the students to SLC within 45 days after the first group of students has finished working under one of these licenses.

3. The district contact to obtain result information is: *Margaret Sharp, Executive Director of Curriculum, 302-454-2525*

The district agrees that SLC may create and distribute reports of this assessment data. These reports will be in the format(s) that have been provided to the district and will identify the district by name. The reports will not contain any information that could identify any individual child's name or performance. SLC may make these reports available on its website and distribute them to people interested in Fast ForWord results.

Pricing Valid until 6/15/2005.

ntific Learning agrees to sell and provide and Customer agrees to purchase and pay for the licenses and services pecified above. This Order Form is subject to the Terms and Conditions provided to Customer, which Customer as to review prior to signing. This Order Form and those Terms and Conditions constitute the complete and entire ement between SLC and the Customer with respect to the licenses and services specified above.

red by: Christina School District

Accepted by: Scientific Learning Corporation

By: _____

Name: _____

Title: _____

Date: 06/15/05

te Taxpayer ID #94-3234458

Please fax Order Form to 510-836-6412
Phone: 388-665-9707
Address: 300 Frank H. Ogawa Plaza Suite 600
Oakland, CA, 94612
Scientific
Learning


COPY



## TERMS AND CONDITIONS

**These Terms and Conditions, together with the accompanying Order Form or other mutually agreeable written document specifying the licenses and/or services being purchased (the "Order Document") form a legal agreement (the "Agreement") between Scientific Learning Corporation ("SLC" or the "Licensor") and the individual or entity who is the Customer under the Order Document ("Customer").**

1. **License.** Licensor grants to Customer, and Customer accepts, a limited, non-exclusive, nontransferable license to use the Products (in object code only), OnLine Products (only via access to the user interface over the World Wide Web), and Support Material (collectively, the "Licensed Material"), solely for educational and related administrative purposes and subject to the terms provided in this Agreement. The Licensed Material is protected by trade secret and/or copyright law and is proprietary to Licensor and/or its licensors. The Licensed Material is licensed, not sold.

2. **Definitions.** These definitions apply to these Terms and Conditions and the associated Order Documents.
   a. Products: the Software Products specified as licensed in the Order Document.
   b. Online Products: the Online Products specified in the Order Document.
   c. Support Material: the related technical support and professional development software, product manuals and documentation (written or electronic) provided to Customer.
   d. Software: collectively, the Products, the Online Products and any software included in the Support Material. Software does not include any other software programs that may be included on discs that may be shipped to Customer but are not specified in the applicable Order Document.
   e. Licensed Material: collectively, the Products, the Online Products and the Support Material.

3. **Product License Conditions.** The following types of licenses, if specified in the Order Document, have the meanings set forth below:
   a. For use at a specified site: the Products may be used only at the physical location specified, which may not be changed without Licensor's prior written consent, and only by students who are regularly enrolled students at that site.
   b. Site license: Site licensed Products may be used on an unlimited number of computers at the physical site specified.
   c. Workstation license: Products under a workstation license may be installed and used only on the specified number of computers. In a network configuration in which the host computer may not be used by students, the host computer is not counted towards the workstation limit, but all computers used by students are counted. All Language Products licensed for a specified workstation limit must be installed on the same workstations; one Language Product may not be installed on one workstation and a second Language Product on a different workstation.
   d. Disc license: The number of simultaneous users of disc-licensed Products may not exceed the number

of CDs containing the Product that have been provided by Licensor under the license.
   e. Per participant license: The Customer may use the Product with a maximum aggregate number of participants equal to the number of per participant licenses purchased. Each time a Product is used by a different person counts as one participant, even if a given individual uses more than one Product.
   f. The exercises in the Products may be used only during the time period specified as the license term.
   g. Licensor is required to provide only the number of CDs for Products specified in the Order Document. Additional or replacement copies of CDs may be available for purchase. If additional or replacement CDs are provided, the Products on such CDs shall be subject to the same license terms as the original Products, and upon delivery shall be included within the term Products for purposes of this Agreement.

4. **Online Product License Conditions.** If the Order Document licenses Online Products, the following terms govern access to those Online Products:
   a. The OnLine Products are maintained on SLC servers; access is provided to Customer via the World Wide Web. SLC is not responsible for any incompatibility between the OnLine Products and services provided by Customer's Internet service provider.
   b. The Progress Tracker Online Data System is licensed on a per site basis. Progress Tracker and other Online Products licensed on a per site basis may be used only by Customer staff in connection with students who are participating in Products at the specified site.
   c. A single course registration entitles one person to enroll in one specified OnLine product.
   d. Customer acknowledges that not all Products may feature Progress Tracker system access.
   e. SLC may, from time to time, in its sole discretion, add new content to or modify or discontinue content contained in the OnLine Products.

5. **Using the Products and the OnLine Products.**
   a. Customer agrees to use only the most recent release of the Products that has been provided to Customer by Licensor.
   b. Customer is solely responsible for selecting appropriate participants to use the Software.
   c. Except as otherwise agreed in writing, installation of all Software is the responsibility of Customer. Customer is solely responsible for providing the computer equipment, other software, headphones, telecommunications links, and/or Internet access required to use the Software in accordance with the system requirements provided by SLC. Customer

Scientific
Learning.

is solely responsible for all expenses incurred by it in using the Software.

d. Customer agrees to keep any activation, product, organization or other codes or identification numbers issued to Customer by Licensor confidential and to use them only for purposes of using the Software under the terms of this Agreement.

e. Customer is responsible for controlling and managing access to the OnLine Products and the data stored on those Products, using user identifications provided by Licensor and generated by Customer. Customer agrees that in using the OnLine Products and reports generated by those Products, Customer will comply with all applicable federal and state privacy and student records laws.

f. Customer acknowledges that certain Product licenses require the CD for that Product to be in the applicable computer during use.

6. **Support and Service Terms.** If the Order Document specifies support or other services to be provided by SLC, the following terms govern such services.

a. Support for Products includes access to SLC's service representatives by telephone, email or Web chat during SLC's standard service days and hours. Premier Support permits access by any personnel of Customer. Centralized Support permits access only by a limited number of specified personnel of Customer, all of whom have been trained by SLC. Standard service days and hours are stated on SLC's web site, and may be changed by SLC from time to time.

b. Support for Products also includes technical updates and minor modifications to the Products, as well as Web-based informational sessions, manuals, guides, training materials, automatic progress reports, and other implementation resources, in electronic format, as such may be made available by SLC from time to time without further charge to customers with that level of support. Support does not include access to new products, new editions, new versions, or new releases (as such are specified by SLC) that may be made available by SLC from time to time. Any updates or modifications supplied shall be subject to the same license terms as the Products to which they relate and upon delivery shall be included in the term Products.

c. Support is limited to the Products, site and support time period specified in the Order Document.

d. If an Order Document specifies a per participant license and does not contain any separate charge for support, 20% of the price of the license shall be allocated to support.

e. Once a new release, edition or version of Software has been released, support will be available only until the service "end of life" of such prior release, edition or version as determined by SLC in its sole discretion, provided, however that the "end of life" will not occur until at least one year after the new release, edition or version is first made available.

f. SLC may provide support or other services through its own personnel or contractors.

g. If Customer requests services outside the scope of those specified in an accepted Order Document, SLC may charge Customer for those services at SLC's then-current time and materials rates and may require payments and/or a purchase order prior to providing such services.

h. To receive support or on-site services, Customer shall (i) supply SLC with sufficient information and data to reproduce the problem; (ii) use the Software on computer and operating systems consistent with SLC's requirements; (iii) use a release of the Software then being supported by SLC; and (iv) maintain an operating environment free of any programs or modifications that might interfere with the Software.

i. With respect to on-site services:

(i) Customer shall provide unencumbered access to all computers with respect to which services are to be performed.

(ii) Service days will be scheduled by mutual agreement of Customer and SLC. SLC requires two business days' notice to reschedule. If Customer reschedules less than two business days prior to a scheduled day, Customer will be charged for one service day.

(iii) All service availability expires at the end of the period specified in the Order Document. Unused services cannot be carried forward.

7. **Renewals or Expansions.**

a. Access to OnLine Products and to support is provided only for the Product(s), site(s) and term specified in the Order Document.

b. If Customer and SLC agree to expand or extend the term, Products or sites for OnLine Products or support, that change will require an additional fee, and will be on the terms specified in these Terms and Conditions, unless SLC has provided Customer with new or additional terms governing such expansion or extension.

8. **Restrictions.** Customer agrees not to, and agrees to cause all persons to whom it makes Licensed Material available not to:

a. Use, copy, rent, lease, lend, license, sublicense, sell, export, assign, transfer, redistribute or in any other way disseminate the Licensed Material, except as expressly permitted by this Agreement. Customer is permitted to (1) copy certain files from the Products onto the hard drive of the computer on which the Product is being used in order to optimize the performance of the Product, provided that the copied files may only be used subject to the restrictions of the applicable license, as outlined in this Agreement; (2) copy the Products (or the Product files from an installed machine) onto a backup computer of the Licensee, provided that such copy may only be used to re-install the Products in the event of a malfunction, for use in accordance with all applicable terms of the license; (3) copy manuals and training materials provided

Scientific
Learning.

by Scientific Learning, for use only in connection with use of the Software under Customer's license. Any permitted copy must fully preserve all proprietary, copyright and identification notices contained in the original Licensed Material.
  b. Reverse engineer, decompile, disassemble or otherwise attempt to derive the source code for the Software.
  c. Modify, translate or create derivative works or adaptations from the Licensed Material.
  d. Use any Licensed Material that is not Software other than in connection with and to facilitate the use of the Software.
  e. Modify or attempt to modify any license terms encoded in the Software or modify any settings on a computer for the purpose of circumventing the limitations of the license.

FAILURE TO COMPLY WITH THESE RESTRICTIONS WILL CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT AND A VIOLATION OF THE LAW, AND WILL GIVE SLC THE RIGHT TO IMMEDIATELY TERMINATE THIS AGREEMENT AND ALL RIGHTS GRANTED HEREBY. ALL RIGHTS NOT EXPRESSLY GRANTED BY THIS AGREEMENT ARE RESERVED BY SLC.

Order Documents may include additional restrictions, limitations or other terms relating to the Software being licensed or services being purchased.

9.  **Limited Warranties.**   Licensor warrants to Customer that the Software will have substantially the functionality described in the Manuals and Guides that accompany the Software for a period of 90 days from the applicable invoice date.  The limited warranty applies only if the Software is used in accordance with the published instructions for its use, and will not apply if the failure resulted from accident, abuse or misapplication or to the extent the Software is combined with any software product not provided by SLC.  Licensor does not warrant that the Software will operate or be accessible without interruption, be error or bug-free, or be compatible with particular computer equipment or other software on or with which Customer wishes to use it.  Licensor further warrants, for a period of 90 days from the date the service was rendered, that any services provided under this Agreement will be performed in a good and workmanlike manner, in accordance with professional standards generally accepted in the industry.  The exclusive remedy for any breach of these limited warranties is, at Licensor's option, the repair or replacement of the Software, the re-performance of services, or (upon return of the affected Software and related documents and the termination of the license with respect to the Software) the refund of all or a pro rata portion of the fee paid for the applicable license or service.  The foregoing states the complete and entire remedies that Customer has under these warranties.  Neither SLC nor any other Licensor shall have any responsibility for any warranty claims made outside of the warranty period.

10.  **No Other Warranties; Limitation of Liability.**  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, LICENSOR, ON BEHALF OF ITSELF AND ITS LICENSORS, DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE SOFTWARE OR ANY SERVICES PROVIDED UNDER THIS AGREEMENT, EITHER EXPRESSED, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NONINFRINGEMENT.  LICENSOR MAKES NO WARRANTY WITH RESPECT TO THE EFFICACY OF ANY SOFTWARE, INCLUDING BUT NOT LIMITED TO ITS EFFICACY IN DEALING WITH ANY LEARNING PROBLEM OR OTHER CONDITION.  REGARDLESS OF THE SUCCESS OR EFFECTIVENESS OF OTHER REMEDIES, IN NO EVENT WILL LICENSOR OR ITS LICENSORS BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR EXEMPLARY DAMAGES WHATSOEVER ARISING OUT OF THIS AGREEMENT OR THE USE OF OR INABILITY TO USE ANY PRODUCT OR SERVICE PROVIDED HEREUNDER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST INFORMATION, LOST REVENUES OR PROFITS OR BUSINESS INTERRUPTION), HOWEVER ARISING AND UNDER ANY THEORY OF LIABILITY INCLUDING, WITHOUT LIMITATION, BREACH OF CONTRACT, BREACH OF WARRANTY, OR TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) EVEN IF LICENSOR OR ITS LICENSORS HAVE BEEN ADVISED OF OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES.  IN NO EVENT WILL LICENSOR OR ITS LICENSORS BE LIABLE IN DAMAGES OR OTHERWISE IN EXCESS OF THE AMOUNT PAID TO LICENSOR FOR THE SOFTWARE OR SERVICE ON WHICH THE CLAIM IS BASED.  CUSTOMER ACKNOWLEDGES AND AGREES THAT THE DISCLAIMER OF WARRANTIES, LIMITATIONS ON LIABILITY AND LIMITED REMEDIES CONTAINED IN THIS AGREEMENT ARE FUNDAMENTAL PARTS OF THE BASIS OF LICENSOR'S BARGAIN HEREUNDER.  SOME JURISDICTIONS DO NOT PERMIT THE EXCLUSION OF CERTAIN TYPES OF DAMAGES OR THE DISCLAIMER OF CERTAIN IMPLIED WARRANTIES, SO SOME OF THE FOREGOING MAY NOT BE APPLICABLE.  TO THE EXTENT THAT LICENSOR MAY NOT DISCLAIM ANY WARRANTY, THE SCOPE AND DURATION OF SUCH WARRANTY SHALL BE THE MINIMUM PERMITTED UNDER APPLICABLE LAW.

11.  **General**
  a.  **Use of Data.**  Customer agrees that SLC may use any data or information transmitted or otherwise provided to SLC that relates to the Software or Customer's use of the Software, including results on tests and other assessments, for research, norming, marketing and other purposes, provided that Customer may not be identified as the source of any particular information without Customer's prior consent and provided that all participants shall remain anonymous unless they otherwise consent.
  b.  **Taxes.**  Customer agrees to pay Licensor all applicable sales, use or other taxes related to this Agreement, however designated, except for taxes based on Licensor's income.  If Customer claims tax exempt status, Customer agrees to provide Licensor with evidence of such tax exemption upon Licensor's request.  All pricing set forth in the Order Document in United States dollars.
  c.  **Breach; Termination.**  Licensor shall have the right to suspend its performance and Customer's right to

Scientific
Learning™

use the Software under this Agreement if Customer fails to pay any fee when due or breaches any of its obligations under this Agreement. Licensor also reserves the right to charge interest on late payments. In addition, either party shall have the right to terminate this Agreement in whole or in part upon 30 days written notice to the other party, in the event the other party materially breaches this Agreement and fails to correct such breach within such 30-day period. Upon any such termination of this Agreement, the license granted hereunder ends.

d. **Audit.** Customer agrees, at Licensor's request, to give Licensor reasonable access to Customer's premises and records and to all computers on which the Software has been used or through which the OnLine Products have been accessed for the purpose of auditing Customer's compliance with this Agreement. If Licensor's audit finds that Customer has used Software in a manner not permitted by this Agreement, Customer will pay Licensor any additional fees due under Licensor's standard pricing schedule.

e. **Entire Agreement.** These Terms and Conditions, the Order Document, any signed written agreement between Licensor and Customer relating to this license and the documents to which they refer constitute the entire agreement between Licensor and Customer relating to the subject matter hereof. This Agreement may not be changed in any way except by a writing executed by both parties. If Customer submits a purchase order to purchase licenses or services under this Agreement, any terms of that purchase order that are different from the terms of this Agreement shall be of no effect. The waiver or failure of Licensor to exercise any rights under this Agreement will not be deemed a waiver of any further right under this Agreement.

f. **Severability.** If any term of this Agreement is declared invalid by a court of competent jurisdiction or by operation of law, the remaining terms will be unimpaired, and the invalid term will be replaced by such valid term as comes closest to the intention underlying the invalid term.

g. **Force Majeure.** Neither party shall be liable for any failure to perform hereunder due to causes beyond its reasonable control.

h. **International.** The parties hereby confirm their request that this Agreement and all documents related directly or indirectly thereto be drafted in the English language. Les parties aux présentes reconnaissent avoir requis que la présente convention ainsi que tous les documents qui s'y rattachent directement ou indirectement soient rédigés en langue anglaise. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to any of the transactions, which are contemplated by this Agreement.

i. **US Government End Users.** If Customer is a branch or agency of the US government: The Licensed Materials are composed of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 CFR 12.212 (SEPT. 1995) and are provided to the Government (a) for acquisition by or on behalf of civilian agencies, consistent with the policy set forth in 48 CFR 12.212; or (b) for acquisition by or on behalf of units of the Department of Defense consistent with the policies set forth in 48CFR 227.7202-1 (Jun 1995) and 227.7202-3 (Jun 1995).

Rev. 050127